**FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver of Twin City Savings, F.S.A.**

v.

**Gary J. ROUSE, Sandra T. Rouse, Alvin J. Faucheux, Jr., and Glen A. Slavich.**

Civ. A. Nos. 93–1633, 93–1634.

United States District Court, E.D. Louisiana.

July 18, 1994.

Julie E. Schwartz, Dena Lynn Olivier, Daniel Everett LaGrone, William Peak Janvier, Liskow & Lewis, New Orleans, LA, for F.D.I.C.

Emile Louis Turner, Jr., Turner, Young, et al., Harvey C. Koch, Howard Marks, Koch & Rouse, New Orleans, LA, for Gary J. and Sandra T. Rouse, Alvin J. Faucheux, Jr.

George Paul Vedros, Cleveland, Barrios, et al., New Orleans, LA, for Glen A. Slavich.

CLEMENT, District Judge.

### ORDER AND REASONS

Plaintiff's motion for summary judgment was decided this date on memoranda. For the reasons set forth below, plaintiff's motion is **GRANTED.**

## I. BACKGROUND

This action was brought by the Federal Deposit Insurance Corporation, as Receiver of Twin City Savings, F.S.A. ("F.D.I.C." or "the Receiver"), in an effort to collect on continuing guarantees executed by defendants, Gary J. Rouse, Sandra T. Rouse, Alvin J. Faucheux, Jr., and Glen A. Slavich. Each defendant executed such a guarantee in favor of Twin City Savings Bank, F.S.B. As a result of these guarantees, each defendant became a surety for Holiday Tract Development, Inc. ("Holiday Tract") and G.J. Rouse Company, Inc. ("Rouse Company").[1] It is these suretyship obligations that are the subject of the present lawsuit.

It cannot be disputed that the Receiver is the holder and beneficiary of the continuing guarantees. The agreements were originally executed in favor of Twin City Savings Bank, F.S.B. The Federal Savings and Loan Insurance Corporation ("F.S.L.I.C.") was appointed as receiver of Twin City Savings Bank, F.S.B. on August 20, 1987, by the Federal Home Loan Bank Board. Subsequent to the appointment of F.S.L.I.C. as receiver, Twin City Savings, F.S.A. was organized. Pursuant to a duly authorized Acquisition Agreement, Twin City Savings, F.S.A. acquired all of the assets and assumed the bulk of Twin City Savings Bank, F.S.B.'s liabilities. Among the assets acquired by Twin City Savings, F.S.A. were the various continuing guarantees that are the subject of this lawsuit.

Eventually Twin City Savings, F.S.A. was also declared insolvent and the F.S.L.I.C. was appointed as receiver. On August 9, 1989, pursuant to the Financial Institutions Reform, Recovery, and Enforcement Act, the F.D.I.C. succeeded the F.S.L.I.C. as receiver. Thus, the F.D.I.C. is the holder of the continuing guarantee agreements:

> The [Federal Deposit Insurance] Corporation shall, as conservator or receiver, and by operation of law, succeed to—
>
> (1) all rights, titles, powers, and privileges of the insured depository institution, and of any stockholder, member, accountholder, depositor, officer, or director of such institution with respect to the institution and the assets of the institution;

12 U.S.C. § 1821(d)(2)(A).

The Receiver, through affidavits, has established that no payments were ever made on either the Holiday Tract or Rouse Company obligations. On July 23, 1990, the 22nd Judicial District Court ruled in favor of the Receiver and against the principal obligors, Holiday Tract and Rouse Company. Judgment was, thus, rendered in favor of the

---

1. Defendants executed continuing guarantees relative to Holiday Tract's indebtedness on September 19, 1985. Each defendant was obligated up to the following amounts: Gary J. and Sandra T. Rouse—$54,000; Gary J. Rouse (individually)—$100,000; Alvin J. Faucheux, Jr.—$480,000; Glen A. Slavich—$480,000.

On the same date, defendants also became sureties for Rouse Company, in the following amounts: Gary J. and Sandra T. Rouse—$492,000; Alvin J. Faucheux, Jr.—$492,000; and Glen A. Slavich—$492,000.

Receiver and against Holiday Tract in the amount of $712,226.67, plus court costs and interest and against Rouse Company in the amount of $730,093.20, plus court costs and interest. The state court judgment also recognized the Receiver's mortgage as to various property of the debtors.

On June 12, 1991, the property affected by the judgments was sold at sheriff's sale. Following the sale, the following amounts remained unsatisfied: Holiday tract—$815,-079.28 plus interest; Rouse Company—$833,-014.61 plus interest.[2] Following the sale of the mortgaged property, the F.D.I.C. filed the instant action, on May 17, 1993. As Receiver, the F.D.I.C. seeks to recover the deficiency owed under the Holiday Tract and Rouse Company guarantee agreements.

## II. ANALYSIS

### A. Motion for Default Judgment

■ Defendant Alvin J. Faucheux, Jr. has not filed an answer to the Receiver's complaint and default was, thus, entered against him on September 29, 1993. The Receiver then filed a motion for default judgment. Following the submission of its motion for default judgment, the Receiver, by letter dated June 21, 1994, advised the Court that it had learned that Faucheux had filed for relief under Chapter Seven of the United States Bankruptcy Code on February 16, 1994, and had subsequently been released from all of his dischargeable debts. In accordance with the order of the Bankruptcy Court, the Court is compelled to deny the Receiver's motion for default judgment and dismiss the action.

### B. Motion for Summary Judgment

■ As to the remaining defendants, Gary J. Rouse, Sandra T. Rouse, and Glen A. Slavich, the Receiver has moved for summary judgment, contending that there is no genuine issue of material fact as to defendants liability on the continuing guarantees nor as to the amount of money owed thereunder. Defendants have raised various affirmative defenses to the F.D.I.C.'s claim. The essential facts of this case are undisputed and it is ripe for summary judgment.[3]

The Receiver has clearly presented sufficient summary judgment evidence to establish its prima facie case. Defendants do not contend that the F.D.I.C. has failed in that regard. Rather, they assert several affirmative defenses, which they contend defeat plaintiff's claim.

Initially, the defendants argue that the debtors executed a *dation en paiement*[4] with Twin City Savings, F.S.A. and that this transaction extinguished the obligation. In support of their contention, defendants submitted abundant summary judgment evidence. However, after reviewing this evidence, the Court cannot conclude that a single piece of it supports the contention that a *dation* was executed. At best, the evidence demonstrates that the parties were considering whether to do so and that the defendants did in fact execute the documents. A *dation* is governed by Louisiana's law of sales, La. Civ.Code art. 2659, and requires mutual consent. Merely demonstrating that Twin City Savings, F.S.A. authorized its attorneys to complete the *dation* does not establish the execution of that transaction.

■ None of the evidence presented to the Court even suggests that Twin City Savings, F.S.A. ever executed the *dation*.[5]

---

**2.** The interest owed on both obligations began to accrue on April 30, 1993.

**3.** Summary judgment is appropriate when "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.Proc. 56(c). The nonmovant may not defeat a properly supported motion for summary judgment by either resting on the pleadings or by making conclusory assertions. Rather, the adverse party must present the Court with competent summary judgment evidence establishing the existence of a genuine issue of fact necessitating a trial. *Topalian v.*

*Ehrman,* 954 F.2d 1125, 1131 (5th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992).

**4.** The *dation,* or giving in payment, "is an act by which a debtor gives a thing to the creditor, who is willing to receive it, in payment of a sum which is due." La.Civ.Code art. 2655.

**5.** Absent actual delivery, a writing is a prerequisite to a valid transfer of an immovable. La.Civ. Code arts. 1839, 2440. No evidence has been offered that would suggest that Bank A was ever

Rather, the evidence plainly shows that before the transaction could be completed Twin City Savings, F.S.A. was closed and its attorney's authority to execute the *dation* was terminated. The most that could possibly be gleaned from defendant's proffered evidence is that they executed the *dation* and that the bank was considering doing the same. No reasonable juror could conclude, based on the summary judgment evidence presented to the Court, that a *dation* was ever properly confected.[6]

■ As a second line of defense the guarantors contend that the claims asserted by the Receiver were previously settled by Twin City Savings, F.S.A. Under Louisiana law, a settlement agreement "must be either reduced into writing or recited in open court and capable of being transcribed from the record of the proceeding." La.Civ.Code art. 3071. Defendants have not presented the Court with a written settlement agreement or any evidence that such an agreement was ever reduced to writing. Accordingly, that defense fails as a matter of law.

[6] Finally defendants argue that the sheriff's sale of the mortgaged property was defective. The sale was conducted pursuant to a writ of seizure and sale when the proper method was to proceed based on a writ of *fieri facias*. Defendants have not raised any substantive errors in connection with the sale but simply point out that the writs were improperly labeled. The sheriff acted in accordance with the 22nd Judicial District Court's judgment and the property was appraised before being sold. As the sale complied with all of the procedural and substantive requirements of the writ of *fieri facias*, the fact that the sheriff stated that the sale was being conducted pursuant to another type of writ is irrelevant. As the court in *Spencer v. Collins*, 338 So.2d 148, 151 (La.Ct. App.2d Cir.1976), stated:

Regardless of the precise form and language of the writ, it directs the sheriff to seize and sell the mortgaged property in satisfaction of the judgment rendered in the proceedings. The sheriff did, in fact, seize the property, make due return thereof, and proceed to sell the property at public sale after proper delays, advertisement and appraisal. The precise form of the writ ... is of no great importance and does not affect the legality and validity of the sale.

■ Defendants next attack the sheriff's sale on the grounds that they did not receive notice of the sale. It is undisputed that each of the continuing guarantees contained a clause "waiving all notice." Defendants do not contest the validity of this waiver, nor do they even address its existence despite the Receiver's discussion of it in the memorandum in support of the motion for summary judgment. Second, defendants cite no authority for the proposition that a guarantor without any real rights in the property is entitled to notice of the sheriff's sale. The cases cited by defendants involved the question of notice to lienholders. *See, e.g., Mennonite Board of Missions v. Adams*, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983). It is the deprivation of the lienholders interest in the property, without due process of law, that forms the basis of the *Mennonite* decision. *Id.* at 798, 103 S.Ct. at 2711. As defendants had no interest in the property, they cannot claim that the lack of notice deprived them of property without due process. Accordingly, defendants notice argument must also fail.

## III. CONCLUSION

The Receiver has established its prima facie case, as to both liability and damages. Defendants do not dispute the existence and validity of the continuing guarantee agreements or the fact that the principal obligations remain unsatisfied. The various af-

placed in corporeal possession of the property that defendants contend was the subject of the *dation*. Thus, the purported *dation* would have to have been in writing to be effective.

**6.** As the *dation* was required to be written to be binding on the parties, the Court need not address the issue of whether there was an agree-

ment to execute a *dation*. The Court notes, however, that an unwritten agreement to execute a *dation* would not be a valid defense against the F.D.I.C. *See D'Oench, Duhme & Co. v. Federal Deposit Ins. Corp.*, 315 U.S. 447, 457–59, 62 S.Ct. 676, 679–80, 86 L.Ed. 956 (1942).

firmative defenses asserted by defendants fail as a matter of law. Accordingly,

IT IS ORDERED that the Receiver's claims against Alvin J. Faucheux are DISMISSED WITHOUT PREJUDICE and the motion for default judgment is DENIED.

IT IS FURTHER ORDERED that the Receiver's motion for summary judgment is GRANTED.

IT IS FURTHER ORDERED that the Receiver shall submit a proposed judgment, approved by defendants as to form, within ten days of the entry of this order.