# MENNONITE BOARD OF MISSIONS v. ADAMS

No. 82–11.   Argued March 30, 1983—Decided June 22, 1983

MARSHALL, J., delivered the opinion of the Court, in which BURGER, C. J., and BRENNAN, WHITE, BLACKMUN, and STEVENS, JJ., joined. O'CONNOR, J., filed a dissenting opinion, in which POWELL and REHNQUIST, JJ., joined, *post*, p. 800.

*William J. Cohen* argued the cause for appellant. With him on the brief was *C. Whitney Slabaugh.*

*Robert W. Miller* argued the cause and filed a brief for appellee.

JUSTICE MARSHALL delivered the opinion of the Court.

This appeal raises the question whether notice by publication and posting provides a mortgagee of real property with adequate notice of a proceeding to sell the mortgaged property for nonpayment of taxes.

I

To secure an obligation to pay $14,000, Alfred Jean Moore executed a mortgage in favor of appellant Mennonite Board of Missions (MBM) on property in Elkhart, Ind., that Moore had purchased from MBM. The mortgage was recorded in the Elkhart County Recorder's Office on March 1, 1973. Under the terms of the agreement, Moore was responsible for paying all of the property taxes. Without MBM's knowledge, however, she failed to pay taxes on the property.

Indiana law provides for the annual sale of real property on which payments of property taxes have been delinquent for

15 months or longer. Ind. Code § 6–1.1–24–1 *et seq.* (1982). Prior to the sale, the county auditor must post notice in the county courthouse and publish notice once each week for three consecutive weeks. § 6–1.1–24–3. The owner of the property is entitled to notice by certified mail to his last known address. § 6–1.1–24–4.[1] Until 1980, however, Indiana law did not provide for notice by mail or personal service to mortgagees of property that was to be sold for nonpayment of taxes.[2]

After the required notice is provided, the county treasurer holds a public auction at which the real property is sold to the highest bidder. § 6–1.1–24–5. The purchaser acquires a certificate of sale which constitutes a lien against the real property for the entire amount paid. § 6–1.1–24–9. This lien is superior to all other liens against the property which existed at the time the certificate was issued. *Ibid.*

The tax sale is followed by a 2-year redemption period during which the "owner, occupant, lienholder, or other person who has an interest in" the property may redeem the property. § 6–1.1–25–1. To redeem the property an individual must pay the county treasurer a sum sufficient to cover the purchase price of the property at the tax sale and the amount of taxes and special assessments paid by the purchaser following the sale, plus an additional percentage specified in the statute. § 6–1.1–25–2. The county in turn remits the payment to the purchaser of the property at the tax sale. § 6–1.1–25–3.

---

[1] Because a mortgagee has no title to the mortgaged property under Indiana law, the mortgagee is not considered an "owner" for purposes of § 6–1.1–24–4. *First Savings & Loan Assn. of Central Indiana* v. *Furnish,* 174 Ind. App. 265, 272, n. 14, 367 N. E. 2d 596, 600, n. 14 (1977).

[2] Indiana Code § 6–1.1–24–4.2 (1982), added in 1980, provides for notice by certified mail to any mortgagee of real property which is subject to tax sale proceedings, if the mortgagee has annually requested such notice and has agreed to pay a fee, not to exceed $10, to cover the cost of sending notice. Because the events in question in this case occurred before the 1980 amendment, the constitutionality of the amendment is not before us.

If no one redeems the property during the statutory redemption period, the purchaser may apply to the county auditor for a deed to the property. Before executing and delivering the deed, the county auditor must notify the former owner that he is still entitled to redeem the property. § 6–1.1–25–6. No notice to the mortgagee is required. If the property is not redeemed within 30 days, the county auditor may then execute and deliver a deed for the property to the purchaser, § 6–1.1–25–4, who thereby acquires "an estate in fee simple absolute, free and clear of all liens and encumbrances." § 6–1.1–25–4(d).

After obtaining a deed, the purchaser may initiate an action to quiet his title to the property. § 6–1.1–25–14. The previous owner, lienholders, and others who claim to have an interest in the property may no longer redeem the property. They may defeat the title conveyed by the tax deed only by proving, *inter alia*, that the property had not been subject to, or assessed for, the taxes for which it was sold, that the taxes had been paid before the sale, or that the property was properly redeemed before the deed was executed. § 6–1.1–25–16.

In 1977, Elkhart County initiated proceedings to sell Moore's property for nonpayment of taxes. The county provided notice as required under the statute: it posted and published an announcement of the tax sale and mailed notice to Moore by certified mail. MBM was not informed of the pending tax sale either by the County Auditor or by Moore. The property was sold for $1,167.75 to appellee Richard Adams on August 8, 1977. Neither Moore nor MBM appeared at the sale or took steps thereafter to redeem the property. Following the sale of her property, Moore continued to make payments each month to MBM, and as a result MBM did not realize that the property had been sold. On August 16, 1979, MBM first learned of the tax sale. By then the redemption period had run and Moore still owed appellant $8,237.19.

In November 1979, Adams filed a suit in state court seeking to quiet title to the property. In opposition to Adams' motion for summary judgment, MBM contended that it had not received constitutionally adequate notice of the pending tax sale and of the opportunity to redeem the property following the tax sale. The trial court upheld the Indiana tax sale statute against this constitutional challenge. The Indiana Court of Appeals affirmed. 427 N. E. 2d 686 (1981). We noted probable jurisdiction, 459 U. S. 903 (1982), and we now reverse.

## II

In *Mullane* v. *Central Hanover Bank & Trust Co.*, 339 U. S. 306, 314 (1950), this Court recognized that prior to an action which will affect an interest in life, liberty, or property protected by the Due Process Clause of the Fourteenth Amendment, a State must provide "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Invoking this "elementary and fundamental requirement of due process," *ibid.*, the Court held that published notice of an action to settle the accounts of a common trust fund was not sufficient to inform beneficiaries of the trust whose names and addresses were known. The Court explained that notice by publication was not reasonably calculated to provide actual notice of the pending proceeding and was therefore inadequate to inform those who could be notified by more effective means such as personal service or mailed notice:

> "Chance alone brings to the attention of even a local resident an advertisement in small type inserted in the back pages of a newspaper, and if he makes his home outside the area of the newspaper's normal circulation the odds that the information will never reach him are large indeed. The chance of actual notice is further reduced when, as here, the notice required does not even name

those whose attention it is supposed to attract, and does not inform acquaintances who might call it to attention. In weighing its sufficiency on the basis of equivalence with actual notice, we are unable to regard this as more than a feint." *Id.*, at 315.[3]

---

[3] The decision in *Mullane* rejected one of the premises underlying this Court's previous decisions concerning the requirements of notice in judicial proceedings: that due process rights may vary depending on whether actions are *in rem* or *in personam*. 339 U. S., at 312. See *Shaffer* v. *Heitner*, 433 U. S. 186, 206 (1977). Traditionally, when a state court based its jurisdiction upon its authority over the defendant's person, personal service was considered essential for the court to bind individuals who did not submit to its jurisdiction. See, *e. g.*, *Hamilton* v. *Brown*, 161 U. S. 256, 275 (1896); *Arndt* v. *Griggs*, 134 U. S. 316, 320 (1890); *Pennoyer* v. *Neff*, 95 U. S. 714, 726, 733–734 (1878) ("[D]ue process of law would require appearance or personal service before the defendant could be personally bound by any judgment rendered"). In *Hess* v. *Pawloski*, 274 U. S. 352 (1927), the Court recognized for the first time that service by registered mail, in place of personal service, may satisfy the requirements of due process. Constructive notice was never deemed sufficient to bind an individual in an action *in personam*.

In contrast, in *in rem* or *quasi in rem* proceedings in which jurisdiction was based on the court's power over property within its territory, see generally *Shaffer* v. *Heitner, supra*, at 196-205, constructive notice to nonresidents was traditionally understood to satisfy the requirements of due process. In order to settle questions of title to property within its territory, a state court was generally required to proceed by an *in rem* action since the court could not otherwise bind nonresidents. At one time constructive service was considered the only means of notifying nonresidents since it was believed that "[p]rocess from the tribunals of one State cannot run into another State." *Pennoyer* v. *Neff, supra*, at 727. See *Ballard* v. *Hunter*, 204 U. S. 241, 255 (1907). As a result, the nonresident acquired the duty "to take measures that in some way he shall be represented when his property is called into requisition." *Id.*, at 262. If he "fail[ed] to get notice by the ordinary publications which have been usually required in such cases, it [was] his misfortune." *Ibid.*

Rarely was a corresponding duty imposed on interested parties who resided within the State and whose identities were reasonably ascertainable. Even in actions *in rem*, such individuals were generally provided personal service. See, *e. g.*, *Arndt* v. *Griggs, supra*, at 326–327. Where the iden-

In subsequent cases, this Court has adhered unwaveringly to the principle announced in *Mullane*. In *Walker* v. *City of Hutchinson*, 352 U. S. 112 (1956), for example, the Court held that notice of condemnation proceedings published in a local newspaper was an inadequate means of informing a landowner whose name was known to the city and was on the official records. Similarly, in *Schroeder* v. *New York City*, 371 U. S. 208 (1962), the Court concluded that publication in a newspaper and posted notices were inadequate to apprise a property owner of condemnation proceedings when his name and address were readily ascertainable from both deed records and tax rolls. Most recently, in *Greene* v. *Lindsey*, 456 U. S. 444 (1982), we held that posting a summons on the door of a tenant's apartment was an inadequate means of providing notice of forcible entry and detainer actions. See also *Memphis Light, Gas & Water Div.* v. *Craft*, 436 U. S. 1, 13–15 (1978); *Eisen* v. *Carlisle & Jacquelin*, 417 U. S. 156, 174–175 (1974); *Bank of Marin* v. *England*, 385 U. S. 99, 102 (1966); *Covey* v. *Town of Somers*, 351 U. S. 141, 146–147 (1956); *New York City* v. *New York, N. H. & H. R. Co.*, 344 U. S. 293, 296–297 (1953).

---

tity of interested residents could not be ascertained after a reasonably diligent inquiry, however, their interests in property could be affected by a proceeding *in rem* as long as constructive notice was provided. See *Hamilton* v. *Brown, supra,* at 275; *American Land Co.* v. *Zeiss*, 219 U. S. 47, 61–62, 65–66 (1911).

Beginning with *Mullane*, this Court has recognized, contrary to the earlier line of cases, that "an adverse judgment *in rem* directly affects the property owner by divesting him of his rights in the property before the court." *Shaffer* v. *Heitner, supra,* at 206. In rejecting the traditional justification for distinguishing between residents and nonresidents and between *in rem* and *in personam* actions, the Court has not left all interested claimants to the vagaries of indirect notice. Our cases have required the State to make efforts to provide actual notice to all interested parties comparable to the efforts that were previously required only in *in personam* actions. See *infra,* this page.

This case is controlled by the analysis in *Mullane*. To begin with, a mortgagee possesses a substantial property interest that is significantly affected by a tax sale. Under Indiana law, a mortgagee acquires a lien on the owner's property which may be conveyed together with the mortgagor's personal obligation to repay the debt secured by the mortgage. Ind. Code § 32–8–11–7 (1982). A mortgagee's security interest generally has priority over subsequent claims or liens attaching to the property, and a purchase-money mortgage takes precedence over virtually all other claims or liens including those which antedate the execution of the mortgage. § 32–8–11–4. The tax sale immediately and drastically diminishes the value of this security interest by granting the tax-sale purchaser a lien with priority over that of all other creditors. Ultimately, the tax sale may result in the complete nullification of the mortgagee's interest, since the purchaser acquires title free of all liens and other encumbrances at the conclusion of the redemption period.

Since a mortgagee clearly has a legally protected property interest, he is entitled to notice reasonably calculated to apprise him of a pending tax sale. Cf. *Wiswall* v. *Sampson*, 14 How. 52, 67 (1853). When the mortgagee is identified in a mortgage that is publicly recorded, constructive notice by publication must be supplemented by notice mailed to the mortgagee's last known available address, or by personal service. But unless the mortgagee is not reasonably identifiable, constructive notice alone does not satisfy the mandate of *Mullane*.[4]

---

[4] In this case, the mortgage on file with the County Recorder identified the mortgagee only as "MENNONITE BOARD OF MISSIONS a corporation, of Wayne County, in the State of Ohio." We assume that the mortgagee's address could have been ascertained by reasonably diligent efforts. See *Mullane* v. *Central Hanover Bank & Trust Co.*, 339 U. S., at 317. Simply mailing a letter to "Mennonite Board of Missions, Wayne County, Ohio," quite likely would have provided actual notice, given "the well-known skill of postal officials and employés in making proper delivery of letters defectively addressed." *Grannis* v. *Ordean*, 234 U. S. 385, 397–398 (1914). We do not suggest, however, that a governmental body is

Neither notice by publication and posting, nor mailed notice to the property owner, are means "such as one desirous of actually informing the [mortgagee] might reasonably adopt to accomplish it." *Mullane*, 339 U. S., at 315. Because they are designed primarily to attract prospective purchasers to the tax sale, publication and posting are unlikely to reach those who, although they have an interest in the property, do not make special efforts to keep abreast of such notices. *Walker* v. *City of Hutchinson, supra*, at 116; *New York City* v. *New York, N. H. & H. R. Co., supra*, at 296; *Mullane, supra*, at 315. Notice to the property owner, who is not in privity with his creditor and who has failed to take steps necessary to preserve his own property interest, also cannot be expected to lead to actual notice to the mortgagee. Cf. *Nelson* v. *New York City*, 352 U. S. 103, 107–109 (1956). The county's use of these less reliable forms of notice is not reasonable where, as here, "an inexpensive and efficient mechanism such as mail service is available." *Greene* v. *Lindsey, supra*, at 455.

Personal service or mailed notice is required even though sophisticated creditors have means at their disposal to discover whether property taxes have not been paid and whether tax-sale proceedings are therefore likely to be initiated. In the first place, a mortgage need not involve a complex commercial transaction among knowledgeable parties, and it may well be the least sophisticated creditor whose security interest is threatened by a tax sale. More importantly, a party's ability to take steps to safeguard its interests does not relieve the State of its constitutional obligation. It is true that particularly extensive efforts to provide notice may often be required when the State is aware of a party's inexperience or incompetence. See, *e. g.*, *Memphis Light, Gas & Water Div.* v. *Craft, supra*, at 13–15; *Covey* v. *Town of Somers, supra*. But it does not follow that the State may

—————————

required to undertake extraordinary efforts to discover the identity and whereabouts of a mortgagee whose identity is not in the public record.

forgo even the relatively modest administrative burden of providing notice by mail to parties who are particularly resourceful.[5] Cf. *New York City* v. *New York, N. H. & H. R. Co.,* 344 U. S., at 297. Notice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of *any* party, whether unlettered or well versed in commercial practice, if its name and address are reasonably ascertainable. Furthermore, a mortgagee's knowledge of delinquency in the payment of taxes is not equivalent to notice that a tax sale is pending. The latter "was the information which the [county] was constitutionally obliged . . . to give personally to the appellant—an obligation which the mailing of a single letter would have discharged." *Schroeder* v. *New York City,* 371 U. S., at 214.

We therefore conclude that the manner of notice provided to appellant did not meet the requirements of the Due Process Clause of the Fourteenth Amendment.[6] Accordingly, the judgment of the Indiana Court of Appeals is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*

JUSTICE O'CONNOR, with whom JUSTICE POWELL and JUSTICE REHNQUIST join, dissenting.

Today, the Court departs significantly from its prior decisions and holds that before the State conducts *any* proceeding that will affect the legally protected property interests of

---

[5] Indeed, notice by mail to the mortgagee may ultimately relieve the county of a more substantial administrative burden if the mortgagee arranges for payment of the delinquent taxes prior to the tax sale.

[6] This appeal also presents the question whether, before the County Auditor executes and delivers a deed to the tax-sale purchaser, the mortgagee is constitutionally entitled to notice of its right to redeem the property. Cf. *Griffin* v. *Griffin,* 327 U. S. 220, 229 (1946). Because we conclude that the failure to give adequate notice of the tax-sale proceeding deprived appellant of due process of law, we need not reach this question.

*any* party, the State must provide notice to that party by means certain to ensure actual notice as long as the party's identity and location are "reasonably ascertainable." *Ante,* at 800. Applying this novel and unjustified principle to the present case, the Court decides that the mortgagee involved deserved more than the notice by publication and posting that were provided. I dissent because the Court's approach is unwarranted both as a general rule and as the rule of this case.

I

In *Mullane* v. *Central Hanover Bank & Trust Co.*, 339 U. S. 306, 314 (1950), the Court established that "[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." We emphasized that notice is constitutionally adequate when "the practicalities and peculiarities of the case . . . are reasonably met," *id.*, at 314–315. See also *Walker* v. *City of Hutchinson*, 352 U. S. 112, 115 (1956); *Schroeder* v. *New York City*, 371 U. S. 208, 211–212 (1962); *Greene* v. *Lindsey*, 456 U. S. 444, 449–450 (1982). The key focus is the "reasonableness" of the means chosen by the State. *Mullane*, 339 U. S., at 315. Whether a particular method of notice is reasonable depends on the outcome of the balance between the "interest of the State" and "the individual interest sought to be protected by the Fourteenth Amendment." *Id.*, at 314. Of course, "[i]t is not our responsibility to prescribe the form of service that the [State] should adopt." *Greene, supra,* at 455, n. 9. It is the primary responsibility of the State to strike this balance, and we will upset this process only when the State strikes the balance in an irrational manner.

From *Mullane* on, the Court has adamantly refused to commit "itself to any formula achieving a balance between these interests in a particular proceeding or determining

when constructive notice may be utilized or what test it must meet." 339 U. S., at 314. Indeed, we have recognized "the impossibility of setting up a rigid formula as to the kind of notice that must be given; notice required will *vary* with circumstances and conditions." *Walker, supra,* at 115 (emphasis added). Our approach in these cases has always reflected the general principle that "[t]he very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation." *Cafeteria & Restaurant Workers* v. *McElroy,* 367 U. S. 886, 895 (1961). See also *Mathews* v. *Eldridge,* 424 U. S. 319, 334–335 (1976).

## A

Although the Court purports to apply these settled principles in this case, its decision today is squarely at odds with the balancing approach that we have developed. The Court now holds that *whenever* a party has a legally protected property interest, "[n]otice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests . . . if [the party's] name and address are reasonably ascertainable." *Ante,* at 800. Without knowing what state and individual interests will be at stake in future cases, the Court espouses a general principle ostensibly applicable whenever *any* legally protected property interest may be adversely affected. This is a flat rejection of the view that no "formula" can be devised that adequately evaluates the constitutionality of a procedure created by a State to provide notice in a certain class of cases. Despite the fact that *Mullane* itself accepted that constructive notice satisfied the dictates of due process in certain circumstances,[1] the

---

[1] In *Mullane* v. *Central Hanover Bank & Trust Co.,* 339 U. S., at 314, we held that "[p]ersonal service has not in all circumstances been regarded as indispensable to the process due to residents, and it has more often been held unnecessary as to nonresidents."

Court, citing *Mullane,* now holds that constructive notice can *never* suffice whenever there is a legally protected property interest at stake.

In seeking to justify this broad rule, the Court holds that although a party's inability to safeguard its interests may result in imposing greater notice burdens on the State, the fact that a party may be more able "to safeguard its interests does not relieve the State of its constitutional obligation." *Ante,* at 799. Apart from ignoring the fact that it is the totality of circumstances that determines the sufficiency of notice, the Court also neglects to consider that the constitutional obligation imposed upon the State may itself be defined by the party's ability to protect its interest. As recently as last Term, the Court held that the focus of the due process inquiry has always been the effect of a notice procedure on "a particular *class* of cases." *Greene, supra,* at 451 (emphasis added). In fashioning a broad rule for "the least sophisticated creditor," *ante,* at 799, the Court ignores the well-settled principle that "procedural due process rules are shaped by the risk of error inherent in the truthfinding process as applied to the generality of cases, not the rare exceptions." *Mathews* v. *Eldridge, supra,* at 344; see also *Califano* v. *Yamasaki,* 442 U. S. 682, 696 (1979). If the members of a particular class generally possess the ability to safeguard their interests, then this fact must be taken into account when we consider the "totality of circumstances," as required by *Mullane.* Indeed, the criterion established by *Mullane* "'is not the possibility of conceivable injury but the just and reasonable character of the requirements, having reference to the subject with which the statute deals.'" 339 U. S., at 315 (quoting *American Land Co.* v. *Zeiss,* 219 U. S. 47, 67 (1911)).

The Court also suggests that its broad rule has really been the law ever since *Mullane.* See *ante,* at 796–797, n. 3. The Court reasons that before *Mullane,* the characterization of proceedings as *in personam* or *in rem* was relevant to

determining whether the notice given was constitutionally sufficient,[2] and that once *Mullane* held that the "power of the State to resort to constructive service" no longer depended upon the "historic antithesis" of *in rem* and *in personam* proceedings, 339 U. S., at 312–313, constructive notice became insufficient as to *all* proceedings.

The plain language of *Mullane* is clear that the Court expressly refused to reject constructive notice as *per se* insufficient. See *id.*, at 312–314. Moreover, the Court errs in thinking that the only justification for constructive notice is the distinction between types of proceedings. See *ante*, at 796–797, n. 3. The historical justification for constructive notice was that those with an interest in property were under an obligation to act reasonably in keeping themselves informed of proceedings that affected that property. See, *e. g., North Laramie Land Co.* v. *Hoffman*, 268 U. S. 276, 283 (1925); *Ballard* v. *Hunter*, 204 U. S. 241, 262 (1907). As discussed in Part II of this dissent, *Mullane* expressly acknowledged, and did not reject, the continued vitality of the notion that property owners had some burden to protect their property. See 339 U. S., at 316.

## B

The Court also holds that the condition for receiving notice under its new approach is that the name and address of the party must be "reasonably ascertainable." In applying this requirement to the mortgagee in this case, the Court holds that the State must exercise "reasonably diligent efforts" in determining the address of the mortgagee, *ante*, at 798, n. 4,

---

[2] The Court is simply incorrect in asserting that before *Mullane*, constructive notice was rarely deemed sufficient even as to *in rem* proceedings when residents of the State were involved, *ante*, at 796–797, n. 3. See, *e. g., Longyear* v. *Toolan*, 209 U.S. 414, 417–418 (1908). See also Note, The Constitutionality of Notice by Publication in Tax Sale Proceedings, 84 Yale L. J. 1505, 1507 (1975) ("This rule [permitting constructive notice] was . . . extended to all in rem proceedings, whether involving property owned by nonresidents or residents").

and suggests that the State is required to make some effort "to discover the identity and whereabouts of a mortgagee whose identity is not in the public record." *Ante,* at 799, n. 4. Again, the Court departs from our prior cases. In *all* of the cases relied on by the Court in its analysis, the State either actually knew the identity or incapacity of the party seeking notice, or that identity was "very easily ascertainable." *Schroeder,* 371 U. S., at 212–213. See also *Mullane,* 339 U. S., at 318; *Covey* v. *Town of Somers,* 351 U. S. 141, 146 (1956); *Walker,* 352 U. S., at 116; *Eisen* v. *Carlisle & Jacquelin,* 417 U. S. 156, 175 (1974).[3] Under the Court's decision today, it is not clear how far the State must go in providing for reasonable efforts to ascertain the name and address of an affected party. Indeed, despite the fact that the recorded mortgage failed to include the appellant's address, see *ante,* at 798–799, n. 4, the Court concludes that its whereabouts were "reasonably identifiable." *Ante,* at 798. This uncertainty becomes particularly ominous in the light of the fact that the duty to ascertain identity and location, and to notify by mail or other similar means, exists whenever any legally protected interest is implicated.

## II

Once the Court effectively rejects *Mullane* and its progeny by accepting a *per se* rule against constructive notice, it applies its rule and holds that the mortgagee in this case must receive personal service or mailed notice because it has a legally protected interest at stake, and because the mortgage was publicly recorded. See *ante,* at 798. If the Court had

---

[3] In *Mullane,* the Court contrasted those parties whose identity and whereabouts are known or "at hand" with those "whose interests or whereabouts could not with due diligence be ascertained." 339 U. S., at 318, 317. This language must be read in the light of the facts of *Mullane,* in which the identity and location of certain beneficiaries were actually known. In addition, the Court in *Mullane* expressly rejected the view that a search "under ordinary standards of diligence" was required in that case. *Id.,* at 317.

observed its prior decisions and engaged in the balancing required by *Mullane*, it would have reached the opposite result.

It cannot be doubted that the State has a vital interest in the collection of its tax revenues in whatever reasonable manner that it chooses: "In authorizing the proceedings to enforce the payment of the taxes upon lands sold to a purchaser at tax sale, the State is in exercise of its sovereign power to raise revenue essential to carry on the affairs of state and the due administration of the laws. . . . 'The process of taxation does not require the same kind of notice as is required in a suit at law, or even in proceedings for taking private property under the power of eminent domain.'" *Leigh* v. *Green*, 193 U. S. 79, 89 (1904) (quoting *Bell's Gap R. Co.* v. *Pennsylvania*, 134 U. S. 232, 239 (1890)). The State has decided to accommodate its vital interest in this respect through the sale of real property on which payments of property taxes have been delinquent for a certain period of time.[4]

The State has an equally strong interest in avoiding the burden imposed by the requirement that it must exercise "reasonable" efforts to ascertain the identity and location of any party with a legally protected interest. In the instant case, that burden is not limited to mailing notice. Rather, the State must have someone check the records and ascertain with respect to each delinquent taxpayer whether there is a mortgagee, perhaps whether the mortgage has been paid off, and whether there is a dependable address.

Against these vital interests of the State, we must weigh the interest possessed by the relevant class—in this case,

---

[4] The Court suggests that the notice that it requires "may ultimately relieve the county of a more substantial administrative burden if the mortgagee arranges for payment of the delinquent taxes prior to the tax sale." *Ante*, at 800, n. 5. The Court neglects the fact that the State is a better judge of how it wants to settle its tax debts than is this Court.

mortgagees.[5] Contrary to the Court's approach today, this interest may not be evaluated simply by reference to the fact that we have frequently found constructive notice to be inadequate since *Mullane.* Rather, such interest "must be judged in the light of its practical application to the affairs of men as they are ordinarily conducted." *North Laramie Land Co.,* 268 U. S., at 283.

Chief Justice Marshall wrote long ago that "it is the part of common prudence for all those who have any interest in [property], to guard that interest by persons who are in a situation to protect it." *The Mary,* 9 Cranch 126, 144 (1815). We have never rejected this principle, and, indeed, we held in *Mullane* that "[a] state may indulge" the assumption that a property owner "usually arranges means to learn of any direct attack upon his possessory or proprietary rights." 339 U. S., at 316. When we have found constructive notice to be inadequate, it has always been where an owner of property is, for all purposes, *unable* to protect his interest because there is no practical way for him to learn of state action that threatens to affect his property interest. In each case, the adverse action was one that was completely unexpected by the owner, and the owner would become aware of the action only by the fortuitous occasion of reading "an advertisement in small type inserted in the back pages of a newspaper [that may] not even name those whose attention it is supposed to attract, and does not inform acquaintances who might call it to attention." *Mullane, supra,* at 315. In each case, the individuals had no reason to expect that their property interests were being affected.

This is not the case as far as tax sales and mortgagees are concerned. Unlike condemnation or an unexpected account-

---

[5] This is not to say that the rule espoused must cover all conceivable mortgagees in all conceivable circumstances. The flexibility of due process is sufficient to accommodate those atypical members of the class of mortgagees.

ing, the assessment of taxes occurs with regularity and predictability, and the state action in this case cannot reasonably be characterized as unexpected in any sense. Unlike the parties in our other cases, the Mennonite Board had a regular event, the assessment of taxes, upon which to focus, in its effort to protect its interest. Further, approximately 95% of the mortgage debt outstanding in the United States is held by private institutional lenders and federally supported agencies. U. S. Dept. of Commerce, Bureau of the Census, Statistical Abstract of the United States: 1982–1983, p. 511 (103d ed.).[6] It is highly unlikely, if likely at all, that a significant number of mortgagees are unaware of the consequences that ensue when their mortgagors fail to pay taxes assessed on the mortgaged property. Indeed, in this case, the Board itself required that Moore pay all property taxes.

There is no doubt that the Board could have safeguarded its interest with a minimum amount of effort. The county auctions of property commence by statute on the second Monday of each year. Ind. Code § 6–1.1–24–2(5) (1982). The county auditor is required to post notice in the county courthouse at least three weeks before the date of sale. § 6–1.1–24–3(a). The auditor is also required to publish notice in two different newspapers once each week for three weeks before the sale. §§ 6–1.1–24–3(a), 6–1.1–22–4(b). The Board could have supplemented the protection offered by the State with the additional measures suggested by the court below: The Board could have required that Moore provide it with copies of paid tax assessments, or could have re-

---

[6] The Court holds that "a mortgage need not involve a complex commercial transaction among knowledgeable parties . . . ." *Ante,* at 799. This is certainly true; however, that does not change the fact that even if the Board is not a professional moneylender, it voluntarily entered into a fairly sophisticated transaction with Moore. As the court below observed: "The State cannot reasonably be expected to assume the risk of its citizens' business ventures." 427 N. E. 2d 686, 690, n. 9 (1981).

quired that Moore deposit the tax moneys in an escrow account, or could have itself checked the public records to determine whether the tax assessment had been paid. 427 N. E. 2d 686, 690, n. 9 (1981).

When a party is unreasonable in failing to protect its interest despite its ability to do so, due process does not require that the State save the party from its own lack of care. The balance required by *Mullane* clearly weighs in favor of finding that the Indiana statutes satisfied the requirements of due process. Accordingly, I dissent.