673 So.2d 877 (1996)
Roy C. SKELTON, Appellant,
v.
Ernest MARTIN, Richard C. Arnold, Sandy K. Perry, and Chemical Bank, Appellees.
No. 94-04093.
District Court of Appeal of Florida, Second District.
March 6, 1996.
Rehearing Denied April 23, 1996.
*878 Roy C. Skelton, pro se.
Martin S. Awerbach of Law Office of Martin S. Awerbach, Clearwater, for Appellees Sandy K. Perry and Chemical Bank.
ALTENBERND, Judge.
Roy C. Skelton appeals a final judgment in an action to quiet title. The judgment invalidates his tax deed and upholds a subsequently recorded deed from Ernest Martin to Sandy K. Perry.[1] We reverse.
Ernest Martin owned Lot 6, Block 13, of the replat of Pine City Subdivision in Pinellas County. He failed to pay the 1990 property tax on this lot.[2] On May 22, 1991, the Pinellas County Tax Collector issued a tax certificate to Bank Atlantic for unpaid taxes. When Mr. Martin failed to redeem the certificate by August 25, 1993, Bank Atlantic requested a tax deed sale pursuant to section 197.502, Florida Statutes (1991).
The clerk of court scheduled a tax deed sale for January 19, 1994, and sent Mr. Martin the statutory notice to owner warning him of that sale. § 197.522(1), Fla.Stat. (1991). The clerk also notified the mortgagees of record. Public notice of the sale was published in the Pinellas County Review on December 17, 24, 31, 1993, and January 7, 1994. § 197.512, Fla.Stat. (1991). Mr. Skelton purchased the property for $23,500 at the scheduled sale. The tax deed was recorded on January 20, 1994.
Meanwhile, Mr. Martin entered into an agreement to sell this same property to Sandy K. Perry for $43,000. If there is a written contract of sale between these two parties, it is not in this record and was not recorded. Equity Title Southeast (Equity Title) performed a title search in connection with this sale in early January 1994. Equity Title did not send an abstractor to the courthouse and it did not examine the notices published in the Pinellas County Review. Instead, its title abstractor used a computer to connect with the "Pinellas County Computer Dial-Up System." The abstractor testified that he examined the current tax year screen for this parcel. In addition to information about current taxes, this screen normally indicates if there are delinquent taxes on the property from prior years. The screen did not so indicate in this instance, and the abstractor did not check the delinquent tax screen to determine whether it showed any tax certificates or delinquent taxes.
Because Equity Title did not discover a problem with Mr. Martin's title to the property and because Mr. Martin executed the no lien affidavit without disclosing the unpaid taxes, Ms. Perry purchased this property at a closing on January 7, 1994. Thus, the closing occurred twelve days before the tax deed sale and the same day as the last publication of public notice in the Pinellas County Review. As part of the closing, Equity Title paid the 1993 property taxes with a check that the tax collector deposited on January 11, 1994. However, no one paid the delinquent taxes. The deed to Ms. Perry was not recorded until January 25, 1994, a week after the tax deed sale and five days after Mr. Skelton's deed was recorded.
Mr. Skelton filed this action to quiet title between the competing deeds. Mr. Martin did not appear for the trial and Ms. Perry did not testify.[3] Because a tax deed is prima facie evidence of the regularity of all the proceedings leading up to its issuance, Mr. Skelton had a limited initial burden of proof, and Ms. Perry was obligated to present evidence questioning the validity of the tax deed. § 197.552, Fla.Stat. (1991); Locke v. *879 Stuart, 113 So.2d 402 (Fla. 1st DCA 1959). The evidence in this case is interesting because it demonstrates a serious variance between the statutory method for the maintenance of public records and the electronic means by which most private and public records are now retrieved. Technology has clearly jumped ahead of the traditional methods of public record-keeping. Equity Title understandably wishes to rely on more efficient technology, but legal title is still governed by statutes.
Section 28.222, Florida Statutes (1991), requires the clerk of circuit court, as the county recorder, to maintain a "general alphabetical index, direct and inverse, of all instruments filed for record," including deeds, mortgages, and tax certificates. These documents are recorded in "one general series of books called `Official Records.'" The Pinellas County Computer Dial-Up System allows remote users to review an electronic version of the official records.[4]
The current tax screen on the dial-up system is clearly not the "general alphabetical index" required by statute. Ms. Perry does not dispute that the tax certificate is properly recorded in the official record and adequately indexed as required by the statutes. Thus, Ms. Perry did not suggest that the tax certificate was void for a statutory reason or that the tax deed sale departed from the statutory requirements. Instead of raising a statutory challenge, Ms. Perry contended that her constitutional due process rights had been violated because she had not received adequate notice of the existence of the tax lien. In essence, Ms. Perry maintained that the current tax screen on the dial-up computer misled Equity Title, and that she would have learned of the tax sale but for this mistake.
For purposes of this opinion, we accept as true that an error existed on the current year tax screen and that such an omission would cause many abstractors not to further examine the computerized files. The question remains whether this error deprived Ms. Perry of constitutional notice of either the tax certificate or of the pending sale.
The tax certificate was recorded in the manner required by statute. Ms. Perry did not even prove that the delinquent tax screen on the dial-up computer omitted this information. The ability to retrieve government documents on the computerized information superhighway is a new tool that streamlines title searches and makes many transactions more economical. Nevertheless, there is no present statutory right to accurate government information on the Internet.[5] At this point in history, such computerized data is not a form of notice constitutionally guaranteed by article I, section 9, of the Florida Constitution, or by the Fourteenth Amendment to the United States Constitution.[6]
Concerning notice of the tax deed sale, Ms. Perry had taken no step that would have placed the clerk on notice of her interest in the property. Although Ms. Perry purchased the property several days before the sale, she had no recorded interest in this lot that would have required the clerk of court to send her notice of the tax deed sale. See, e.g., Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983) (recorded mortgagee entitled to notice of sale); Dudemaine v. Shaw, 153 Fla. 899, 16 So.2d 114 (1944) (clerk had no obligation to search for pending litigation involving property). Thus, she was only entitled to the same notice provided to other members of the public, including Mr. Skelton. Any error in the dial-up computer did not prevent her *880 from reading the Pinellas County Review nor did it result in defective notice of this sale. See Dawson v. Saada, 608 So.2d 806 (Fla. 1992) (deed not invalid because sheriff failed to serve notice to owner where record owner received clerk's notice). Statutes may someday require notices of public sale to be posted on the Internet, but Ms. Perry has no due process right to that notice today.
Accordingly, we reverse the final judgment. On remand, the trial court shall enter a judgment validating Mr. Skelton's tax deed and permit Ms. Perry to pursue a claim against Mr. Martin, including a claim for the excess funds derived from the sale to Mr. Skelton.
Reversed and remanded.
FRANK, A.C.J., and PATTERSON, J., concur.
NOTES
[1] Richard C. Arnold and Chemical Bank are parties to this action because of potential mortgage interests in the property.
[2] The property had an assessed value of $45,800, and was not subject to any exemption. Mr. Martin failed to pay approximately $1,400 as property tax for 1990. He also failed to pay taxes for 1991 and 1992.
[3] Although Ms. Perry is the real party in interest, Equity Title Southeast defended her title, relying primarily on testimony from its abstractors.
[4] No representative of the clerk of circuit court was called to testify about the computer dial-up system. As a result, the record contains a rather limited description of this system and its relationship to the official record books.
[5] As a matter of policy, the legislature encourages state agencies governed by chapter 119 to make public records available by remote electronic means as "an additional method of access." At this time, clerks of circuit courts are not mandated to provide any specific type of official record other than the time-honored official record books. See § 119.01, Fla.Stat. (1995).
[6] We do not need to determine whether such an error can create liability for the clerk of court. See First American Title Ins. Co. v. Dixon, 603 So.2d 562 (Fla. 4th DCA 1992), review denied, 613 So.2d 3 (Fla 1993).