MOORE, J.,
dissents.
hi respectfully dissent. I cannot subscribe to the majority’s dismissal of the district court’s factual findings, its expansive reading of Art. 2004, or its reliance on nonexistent evidence and faulty inferences.
The majority concedes that when the plaintiff fails to object to it, the court may consider evidence offered at the trial of the exception of no cause of action. City of New Orleans v. Board of Directors, 98-1170 (La.3/2/99), 739 So.2d 748; Gipson v. Fortune, 45,201 (La.App. 2 Cir. 1/27/10), 30 So.3d 1076, writ denied, 2010-0432 (La.4/30/10), 34 So.3d 298. Here, the plaintiffs failed to object to the testimony from a prior hearing or to the mountain of documents they themselves filed in opposition to the exception of no cause. In my view, the district court properly deemed the pleadings enlarged to incorporate this evidence. Based on the evidence, the court found no irregularities in the way the judicial sale was conducted and, further, that Otis Jr. thwarted Mr. Mixon’s effort to get actual notice to some of the other heirs. The majority brushes this off as “simply a credibility |2call,” but a credibili *648 ty call is the distinct prerogative of the trier of fact. Rando v. Anco Insulations Inc., 2008-1163 (La.5/22/09), 16 So.3d 1065. In point of fact, Mr. Mixon’s testimony was supported by his phone logs and his truly professional attempt to contact all heirs; by contrast, Otis Jr.’s uncooperative stance is apparent even from the cold record. Finding no abuse of discretion or manifest error, I would not dismiss the district court’s credibility determination or factual findings.
This suit is an action to nullify a judicial sale in a pending succession proceeding. Nullity is predicated on fraud or ill practices. La. C.C.P. art. 2004. Simply put, the plaintiffs recited a litany of irregularities, but they did not allege — certainly not “with specificity” as required by La. C.C.P. art. 856 — that any of these constituted fraud.
As for the implied claim of ill practices, the majority finds a breach of Mennonite Board of Missions v. Adams, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983), but cites no authority that Mennonite’s notice requirements for second mortgagees adversely affected by tax sales should apply to heirs who have received actual notice of a proposed judicial sale of succession property. The majority also finds, anomalously, both that no administration was needed under La. C.C.P. art. 3006, and that appointment of an attorney was needed un~ der Art. 3171. The concurrence opines that administration | Swas “unauthorized” in that Ms. Nunly’s choice of one legal procedure over two or three alternatives somehow deprived the plaintiffs of a legal right.[1] However, the plaintiffs are still parties in the pending, succession case where they are challenging the judicial sale; this being the case, they have neither shown, nor can they show, that enforcement of that sale would be unconscionable and inequitable. Mayo v. Doherty, 2006-1187 (La.App. 3 Cir. 3/7/07), 952 So.2d 853, writ denied, 2007-0721 (La.5/18/07), 957 So.2d 155. Unlike the concurrence, I would not find, on the evidence advanced in the nullity case, that the district court in the succession case abused its sound discretion in ordering a private sale. I also disagree that the heirs could have been sent into possession without administration; the fact that so many heirs were still unidentified simply precluded that procedure.[2] What happened in the succession case is not an ill practice and, in fact, is a far cry from the recent cases which have annulled succession judgments. Succession of Albritton, 497 So.2d 10 (La.App. 4 Cir.), writ denied, 498 |4So.2d 742 (1986); Succession of Skye, 364 So.2d 1357 (La.App. 3 Cir.1978).[3] The majority’s generous reading of Art. 2004 sets the bar disturbingly low for someone to annul a judgment.
*649 The unmasked motive behind the majority’s result emerges in the district court’s obiter dictum that “the property is worth now more than we knew back then.” The majority quotes with approval Middle Tennessee Council v. Ford, 274 So.2d 173 (La. 1973), “A finding that the price was woefully inadequate would result in a vice of substance.” This record, however, offers not one dim scintilla of evidence of a fair market value of the property in June 2003. Unlike the majority, I am unwilling to go outside the record in search of grounds for nullity.
The irony of the majority and concurrence’s whole exercise is their apparent belief that strident opposition by Otis Jr., the McDowells and unnamed others (or by an attorney appointed to represent them under Art. 3171[4]) could have somehow halted the sale of the succession property. To |fithe contrary, such opposition is immaterial, as “one heir alone can force all the rest to a partition at his instance.” La. C.C. art. 1311. The rights of dissenting heirs are protected because the estate is merely converted from property to cash, of which all heirs receive their respective portions. Mayo v. Doherty, supra. In my view, the plaintiffs are improperly using a nullity action to raise claims that should be asserted in the succession case, a misuse of nullity which the district court rightly rejected. Succession of Voland, 296 So.2d 406 (La.App. 4 Cir.), writ refd, 300 So.2d 184 (1974).
I would affirm the district court’s judgment and dismiss this unsubstantiated claim to annul a judicial sale.

. The concurrence (and majority) might also consider turning the same scrutiny to the plaintiffs’ election of legal procedures. The plaintiffs could have forestalled their current plight if, after receiving actual notice by Mr. Mixon's phone calls, they had filed a petition for notice of application for appointment of an administrator under La. C.C.P. art. 3091. They failed to do so, thus waiving any objection to Ms. Nunly’s appointment. Succession of Smith, 219 So.2d291 (La.App. 3 Cir.1969).

. In fact, the concurrence diverges from the majority’s finding that no administration was needed under La. C.C.P. art. 3006.

.Notably, Succession of Shepherd, 454 So.2d 1265 (La.App. 2 Cir. 1984), quoted copiously by the concurrence, was not an action in nullity but an application for private sale in a succession case — precisely the right forum for such a claim and, in my view, where the plaintiffs’ current claims should be litigated. Shepherd also affirmed the "sound discretion" of the district court, a deferential approach which this court would do well to emulate.

. This writer questions whether any attorney could have been more successful in reaching the remaining heirs than Mr. Mixon.