ROSEMARY LEDET, Judge.
| T This is an executory proceeding. From the trial court’s judgment dismissing its executory proceeding as abandoned under La. C.C.P. art. 561,[1] Nationstar Mortgage, LLC[2] (the “Lender”) appeals. For the reasons that follow, we reverse.
FACTUAL AND PROCEDURAL BACKGROUND
On May 11, 2004, Deborah Morris Harris and Gloria Butler Morris (collectively the “Borrowers”) executed a promissory note in the principal amount |2of $362,205.00 (the “Note”), in the Lender’s favor. The Note was secured by a mortgage (the “Mortgage”) encumbering the Borrowers’ property located at 16 Tennyson Place in New Orleans, Louisiana (the “Property”). The Note also contained an acceleration clause. In the Mortgage, the Borrowers agreed that should the Note not be paid within the terms and condi *832 tions in the Mortgage, the Property could be seized and sold by executory process. To facilitate the use of executory process, paragraph 25 of the Mortgage contained the following confession of judgment: “[flor purposes of foreclosure under execu-tory procedure, Borrower confesses judgment and acknowledges to be indebted to Lender for all sums secured by this Security Instrument, in principal, interest, costs, expenses, attorneys’ fees and other fees and charges.”
The Borrowers defaulted on the Note and the Mortgage by failing to make any payments on the Note after October 15, 2007. On January 20, 2009, the Lender exercised its right under the Note and Mortgage to accelerate the entire unpaid principal balance on the Note by filing a Petition for Executory Process (the “Exec-utory Foreclosure Case”). In its petition, the Lender averred that the Borrowers failed to pay the installments due on the Note and that the balance of $340,925.58, together with interest, attorneys’ fees, and costs were due on November 15, 2007. In its petition, the Lender alleged that under La. R.S. 13:4359 it was entitled to “100% of the purchase price at Sheriffs sale.”
13Although no signed order of seizure and sale appears in the record,[3] on January 28, 2009, the clerk of court issued a writ of seizure and sale.[4] A sheriffs sale was initially scheduled for May 28, 2009; however, the Lender, by letter dated May 26, 2009, stopped the sale due to a title problem. The Lender requested that the sale be rescheduled after the title had been cleared. The Lender’s last filing in the record of the Executory Foreclosure Case was another letter dated May 26, 2009, regarding Mennonite notices.[5]
No pleadings were filed in the Executo-ry Foreclosure Case after September 24, 2009, which was the date on which a curator’s motion to withdraw funds was filed.[6] *833 On March 1, 2018, the Borrowers filed an Ex Parte Motion and Order to Dismiss for Abandonment, which the trial court granted on the same date. |4The Lenders then filed a Motion to Set Aside the Order of Dismissal Based on Abandonment. The trial court denied the Lender’s motion. In its written reasons for judgment, the trial court reasoned that La. C.C.P. art. 561 applies to executory foreclosure proceedings and that “[f]rom September 24, 2009, when a Curator’s Motion to Withdraw Funds ... was signed, until March 1, 201S[, when the Borrowers filed their Ex Parte Motion to Dismiss], there were no pleadings filed into this record nor did any sale take place.” The trial court thus denied the Lender’s Motion to Set Aside the Order of Dismissal Based on Abandonment. The Lender then filed the instant appeal.[7]
DISCUSSION
The sole issue on appeal is whether the trial court erred in finding the Lender’s Executory Foreclosure Case has been abandoned under La. C.C.P. art. 561. “Whether an action has been abandoned is a question of law; thus the | r,standard of review of the appellate court is simply to determine if the trial court’s decision was correct.” Heirs of Simoneaux v. B-P Amoco, 13-0760, pp. 2-3 (La.App. 4 Cir. 2/5/14), 131 So.3d 1128 (citing Meyers ex rel. Meyers v. City of New Orleans, 05-1142, p. 2 (La.App. 4 Cir. 5/17/06), 932 So.2d 719, 721); Succession of Sigur v. Henritzy, 13-0398, pp. 8-9 (La.App. 4 Cir. 9/18/13), 126 So.3d 529, 535-36 (collecting cases).
A preliminary issue in this case is whether the abandonment article applies to an executory proceeding. Answering this question in the affirmative, the trial court reasoned that “article 561 does apply to suits for executory process. While the article itself states that it does not apply to certain succession proceedings, there is no other prohibition in the article. Furthermore, in Semel v. Green, 252 La. 386, 211 So.2d 300 (1968), the court did apply the then abandonment article to an executory proceeding.”
Application of the abandonment article to an executory proceeding is supported by *834 an analysis of the plain language of La. C.C.P. art. 561, which employs the broad term “action” and excludes from it only succession proceedings. See Clark v. State Farm Mut. Auto. Ins. Co., 00-3010, p. 5, n. 8 (La.5/15/01), 785 So.2d 779, 783 (noting that Article 561 uses the broad term “action.”). We thus find no error in the trial court’s finding that the abandonment article applies to executory proceedings.
Although the Lender acknowledges the Louisiana Supreme Court’s holding in the Semel case that the abandonment article generally applies to executory | (¡proceedings, the Lender contends that the abandonment article does not apply under the facts of this particular case. According to the Lender, the Semel case is factually distinguishable from this case because, unlike in Semel, the Borrowers in this case failed to seek an injunction or to file an appeal. As a result, the Lender contends that the order of seizure and sale in this case is a final judgment to which res judicata applies and the abandonment article does not.
In support of its position that res judica-ta applies, the Lender cites Countrywide Home Loans Servicing, LP v. Thomas, 12-1304, p. 5 (La.App. 4 Cir. 3/20/13), 113 So.3d 355, 358, writ denied, 13-0894 (La.5/31/13), 118 So.3d 397, for the proposition that Louisiana courts have treated orders of seizure and sale as judgments for res judicata purposes. Continuing, it contends that because abandonment does not apply once a final judgment has been rendered, the trial court erred in finding it abandoned the Executory Foreclosure Case.
Rejecting the Lender’s argument, the trial court distinguished the Countrywide case. The trial court noted that in the Countrywide case there was a sale of the property; whereas, in this case there was no sale. Contrary to the Lender’s contention, we agree with the trial court that the Countrywide case is distinguishable on that basis. An executory process is not complete until there is a sale. As a commentator has noted, “[t]he essence of exec-utory process is that a creditor whose debtor has confessed judgment in advance may obtain immediate seizure and prompt judicial sale of the security by submitting sufficient proof to the court.” Frank Mar-iast, 1A LA. CIV. L. TREATISE, CIVIL PROCEDURE-HSPECIAL7 PROCEEDINGS § 3.1 (2013 ed.). Hence, until there is a sale, logic dictates that the abandonment article continues to apply in the exec-utory proceeding context.
In so finding, we note that the true judgment in an executory proceeding is not the order of seizure and sale; rather, it is the debtor’s confession of judgment in the mortgage. It is the confession of judgment that gives the creditor the right to invoke an executory proceeding, which is defined as “those which are used to effect the seizure and sale of property, without previous citation and judgment.” La. C.C.P. art. 2631.[8] Although the trial court in an executory proceeding issues an order of seizure and sale, the order of seizure and sale is only analogous to a judgment. Indeed, in the Countrywide case, this *835 court noted that in order to apply the doctrine of res judicata in the executory process context, it was necessary to tailor that doctrine to fit the context.
By analogy, we find the doctrine of abandonment applies to all executory proceedings, but it must be tailored to fit the context. Tailoring the abandonment doctrine to fit the executory proceeding context, we find that until there is a sale, the abandonment article continues to apply. Since no sale has occurred in this case, we find no error in the trial court’s finding that the abandonment article applies.
IsAs noted at the outset, the controlling statutory provision is La. C.C.P. art. 561, which provides, in part, that “[a]n action is abandoned when the parties fail to take any step in its prosecution or defense in the trial court for a period of three years.” La. C.C.P. art. 561 A(l). The jurisprudence has outlined the following governing principles on abandonment:
• “Article 561 imposes three requirements to avoid abandonment: (1) a party must take some “step” in the prosecution or defense of the action; (2) the step must be taken in the proceeding and, with the exception of formal discovery, must appear in the record of the suit; and (B) the step must be taken within three years of the last step taken by either party; sufficient action by either plaintiff or defendant will be deemed a step.” Louisiana Dept. of Transp. and Development v. Oilfield Heavy Haulers, L.L.C., 11-0912, pp. 4-6 (La. 12/6/11), 79 So.3d 978, 981-82 (citing Clark v. State Farm Mut. Auto. Ins. Co., 00-3010, pp. 5-6 (La.5/15/01); 785 So.2d 779, 784).
• In this context, “[a] party takes a ‘step’ in the prosecution or defense of an action when he takes formal action before the court intended to hasten the matter to judgment, or when he takes a deposition with or without formal notice.” James v. Formosa Plastics Corp. of Louisiana, 01-2056, p. 4 (La.4/3/02), 813 So.2d 335, 338 (citing Clark, 00-3010 at p. 6, 785 So.2d at 784 and collecting cases); see also Bryant v. City of Monroe, 859 So.2d 907, 910 (La.App. 2d Cir.2003).
• To distinguish informal actions, which are insufficient to prevent abandonment, from “steps,” the jurisprudence has crafted the requirement of “ ‘some formal action before the court.’ ” Clark, 00-3010 at p. 16; 785 So.2d at 790 (quoting DeClouet v. Kansas City Southern Railway Co., 176 So.2d 471, 475 (La.App. 3rd Cir.1965))(Tate, J., dissenting from denial of reh’g). Applying that requirement, the jurisprudence has required “certainty of formal action in the judicial proceedings themselves, rather than the uncertainty of informal action by counsel outside thereof, as necessary to interrupt the running of the [legislatively ordained abandonment period] during which action is required.” Clark, supra (quoting Sanders v. Luke, 92 So.2d 156, 159 (La.App. 1st Cir.1957)).
• The purpose of this “formal action” requirement has been summarized as follows: “the courts have refused to characterize matters outside the record as steps in the prosecution of the suit because: (a) of the uncertainty of accepting informal non-legal proceedings as a step |;,preventing abandonment; or (b) of the ex parte, informal nature of the action, without formal notice to the opposing party, as being an insufficient step in the advancement of the suit.” Clark, 00-3010 at p. 17; 785 So.2d at 790 (quoting DeClouet, 176 So.2d at 476).
*836 • The purpose of Article 561 is the prevention of protracted litigation filed for purposes of harassment or without a serious intent to hasten the claim to judgment. See Chevron Oil Co. v. Traigle, 436 So.2d 530, 532 (La.1983). Abandonment is not a punitive concept; rather, it balances two competing policy considerations: (1) the desire to see every litigant have his day in court and not to lose same by some technical carelessness or unavoidable delay, and (2) the legislative purpose that suits, once filed, should not indefinitely linger, preserving stale claims from the normal extinguishing operation of prescription. Clark, 00-3010 at pp. 10-11; 785 So.2d at 787.
• The Louisiana Supreme Court has uniformly held that Article 561 must be liberally construed in favor of maintaining a plaintiffs suit. Oilfield Heavy Haulers, 11-0912 at p. 5, 79 So.3d at 981-82 (citing Clark, 00-3010 at p. 8, 785 So.2d at 785). “Because dismissal is the harshest of remedies, any reasonable doubt about abandonment should be resolved in favor of allowing the prosecution of the claim and against dismissal for abandonment.” Oilfield Heavy Haulers, supra (citing Clark, 00-3010 at p. 10, 785 So.2d at 787).
• “The intention of Article 561 is not to dismiss suits as abandoned based on technicalities.... For the purpose of determining abandonment, the intent and substance of a party’s actions matter far more than technical compliance.” Oilfield Heavy Haulers, 11-0912 at pp. 5-6, 79 So.3d at 982 (internal citations omitted).
Assuming, arguendo, that the abandonment article applies in this case, the Lender contends that the trial court erred in finding that it abandoned the Executory Foreclosure Case. In support, the Lender cites its actions within the three-year abandonment period to clear title to the Property. Explaining the purpose of its title clearing actions, the Lender points out that the mortgage certificate, which the sheriffs office provided to it after it commenced the Executory Foreclosure Case, showed there were two superior liens on the l1f>Property.[9] For this reason, on May 26, 2009, the Lender informed the sheriffs office, by letter, that it was postponing the previously scheduled sale due to the title problem.
According to the Lender, on October 10, 2011, it obtained from the Orleans Parish Clerk of Court and Ex-Officio Recorder a certificate of cancellation of one of the superior liens on the property — the mortgage in favor of Wells Fargo Home Mortgage, Inc. The certificate of cancellation of the mortgage was filed only in the mortgage records, not in the trial court record (in the Executory Foreclosure Case). The Lender points out that the cancellation of the mortgage is a matter of public record. See Skrzysinski v. Swift Independent Packing Co., 571 So.2d 230, 231 (La.App. 3rd Cir.1990) (noting that a step must appear in the record and “without resort to extrinsic evidence”). The Lender additionally points out that there is no requirement under La. C.C. art. 3366,[10] or any *837 other applicable provision, that a written request for cancellation of a mortgage be filed into the foreclosure proceeding or any other proceeding to be valid.
Rejecting the Lender’s contention that its title clearing actions constituted a “step,” the trial court reasoned that “the article itself [La. C.C.P. art. 561] has a requirement that ‘the step in prosecution’ be taken in the record, in the trial court. The only exception to this requirement involves formal discovery as authorized by the Code. In this case, the record reflects that there was a period of over three years from September 24, 2009 until March 1, 2013 when there were no steps taken in either the prosecution or defense of this matter.” We disagree.
In resolving the issue presented on appeal, the difference between an executory and an ordinary proceeding cannot be ignored. As the Lender’s counsel pointed out at oral argument before this court, once the trial court renders an order of seizure and sale, all of the activities in the executory proceeding occur not in the trial court — as in an ordinary proceeding — but in the sheriffs office. Moreover, this court has recognized that a creditor’s actions that are necessary to proceed with an executory proceeding can constitute a “step” under La. C.C.P. art. 561. Freedlander, Inc., The Mortgage People v. Certain, 628 So.2d 677, 678-79 (La.App. 4th Cir.1993) (holding that “[s]ince a request for issuance of a writ of seizure is required in executory proceedings, La.Code Civ. Proc. Ann. art. 2638 (West 1961), we will consider Freedlander’s request a step in prosecution.”)
Although there is no exception in La. C.C.P. art. 561 for title clearing actions, we find it is appropriate — given the unique nature of an executory proceeding coupled with this court’s holding in the Freedlan-der case — to define a step in an executory proceeding as including such actions taken to facilitate the sale of the property. We thus find that the Lender’s title clearing actions constituted a “step” in the prosecution of the Executory Foreclosure Case. As the Lender points out, it could not proceed with the sale without first obtaining clear 11gtitle to the Property. Thus, we find the Lender’s action in securing the cancellation of the superior mortgage constituted a “step” intended to facilitate the prosecution of its executory proceeding.
Our finding is consistent with the well-settled principle that “any reasonable doubt about abandonment should be resolved in favor of allowing the prosecution of the claim.” Dean v. Delacroix Corp., 12-0917, p. 8 (La.App. 4 Cir. 12/26/12), 106 So.3d 283, 288 (citing Clark, 00-3010 at p. 10, 785 So.2d at 787). As the Louisiana Supreme Court has noted, “[t]he intention of Article 561 is not to dismiss suits as abandoned based on technicalities.” Oilfield Heavy Haulers, 11-0912 at p. 5, 79 So.3d at 981-82. Accordingly, we hold that the trial court erred in denying the Lender’s Motion to Set Aside the Order of Dismissal Based on Abandonment.[11]
*838 DECREE
For the foregoing reasons, the judgment of the trial court is reversed. This case is remanded for further proceedings.
REVERSED AND REMANDED.
LOVE, J., Dissents and Assigns Reasons.

. La. C.C.P. art. 561 provides, in pertinent part, as follows:
A. (1) An action, except as -provided in Subparagraph (2) of this Paragraph, is abandoned when the parties fail to take any step in its prosecution or defense in the trial court for a period of three years ...
[[Image here]]
(3) This provision shall be operative without formal order, but, on ex parte motion of any party or other interested person by affidavit which provides that no step has been timely taken in the prosecution or defense of the action, the trial court shall enter a formal order of dismissal as of the date of its abandonment. The sheriff shall serve the order in the manner provided in Article 1314, and shall execute a return pursuant to Article 1292.
[[Image here]]
B. Any formal discovery as authorized by this Code and served on all parties whether or not filed of record, including the taking of a deposition with or without formal notice, shall be deemed to be a step in the prosecution or defense of an action.

. Nationstar Mortgage, LLC ("Nationstar”) was formerly known as Centex Home Equity Company, LLC ("Centex”). On June 27, 2006, Centex changed its name to Nationstar.

. In the trial court, the Lender acknowledged its inability to locate the order of seizure and sale that it represented the trial court signed on January 23, 2009. Although the trial court subsequently signed an order of seizure and sale on April 17, 2013; the trial court vacated the order on the same day that it signed it. In so doing, the trial court noted on the order that a hearing was set for May 25, 2013, on the Lender’s Motion to Set Aside the Order of Dismissal Based on Abandonment. The record, thus, is devoid of a signed order of seizure and sale.

. In Hood Motor Co., Inc. v. Lawrence, 320 So.2d 111, 114 (La.1975), the Louisiana Supreme Court rejected the argument that an order of seizure and sale signed only by a clerk of court is constitutionally invalid. In so doing, the Supreme Court stated that “Louisiana’s executory proceedings do not deny a debtor due process because an order of seizure and sale is signed by a clerk instead of by a judge.” The Supreme Court reasoned that “the clerk upon signing the order of seizure and sale is under no less a duty than is a judge to satisfy himself that the requirements of law have been met before the order to issue the writ is signed.” Id. (citing La. C.C.P. art. 2638, which provides that ”[i]f the plaintiff is entitled thereto, the court shall order the issuance of a writ of seizure and sale commanding the sheriff to seize and sell the property affected by the mortgage or privilege, as prayed for and according to law.”) The Supreme Court further noted that “the clerk is exercising a quasi-judicial power authorized by the constitution and by statute.” Id. (citing La. C.C.P. art. 283, which provides that ”[t]he clerk of a district court may sign ... [a]n order for the issuance of executory process.”). Given the holding in Hood, supra, the lack of a signed order of seizure and sale in the record does not invalidate the executo-ry proceeding. As the Lender points out, the clerk of court has the authority to sign an order of executory process. See La. C.C.P. art. 283(A)(2).

. Mennonite Board of Missions v. Adams, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983).

. Because one of the Borrowers could not be served, a curator was appointed to represent her.

. Meanwhile, on November 16, 2012, the Borrowers filed a Petition for Writ of Mandamus, which was allocated to a different trial court division than the Executory Foreclosure Case (the "Mandamus Case”). In the Mandamus Case, the Borrowers named as defendants the Lender and Dale Atkins, in her official capacity as the Recorder of Mortgages and Registrar of Conveyances for the Parish of Orleans (the "Clerk of Court”). In the Mandamus Case, the Borrowers prayed for the cancellation of the Note based on the Executory Foreclosure Case being abandoned under La. C.C.P. art. 561. As a result of the abandonment, the Borrowers contended that the underlying Note was prescribed given that their last payment on the Note was made on October 17, 2007. On January 2, 2013, the trial court granted the Borrowers’ writ of mandamus and ordered the Clerk of Court to cancel the Note. The Lender then filed a Motion for New Trial alleging that it was not served timely pursuant to La. C.C.P. art. 3782. On February 28, 2013, the trial court granted the Lender’s Motion for New Trial and vacated its previously issued order requiring the Clerk of Court to cancel the Note. In so doing, the trial court reasoned that the Note had not prescribed. In response, the Borrowers filed a Motion for New Trial, which the trial court denied. From that decision, the Borrowers filed an appeal. On the Lender's Unopposed Motion, the Borrowers’ appeal in the Mandamus Case (2003-CA-0800) and the Lender’s appeal in the Executo-ry Foreclosure Case (2003-CA-1335) were consolidated in this court. Following oral argument before a five-judge panel of this court, the Borrowers filed a motion to dismiss their appeal of the decision in the Mandamus Case, which was granted. Hence, the only appeal before us is the Lender’s appeal of the decision in the Executory Foreclosure Case.

. "Under the Louisiana Constitution of 1921, confessions of judgment for purposes of exec-utory process were the only exception to the constitutional provision prohibiting such stipulations. La. Const, art. VII, § 44 (superseded 1974). While this general proscription was not incorporated in the Louisiana Constitution of 1974, it is contained in La. R.S. 9:3590 (1983).” Patrick S. Ottingera, Enforcement of Real Mortgages by Executory Process, 51 La. L.Rev. 87, 139, n. 16 (1990). La. R.S. 9:3590 provides that "[ejxcept for the purpose of executory process, confessions of judgment, prior to the maturity of the obligation sued on, are hereby prohibited.”

. The first superior lien was a minor's mortgage in the amount of $100.00; the second superior lien was a mortgage in favor of Wells Fargo Home Mortgage, Inc., in the amount of $285,000.00.

. La. C.C. art. 3366 provides:
A. The recorder of mortgages shall cancel, in whole or in part and in the manner prescribed by law, the recordation of a mortgage or privilege upon receipt of a written request for cancellation in a form prescribed by law and that:
*837 (1) Identifies the mortgage or privilege by reference to the place in the records where it is recorded; and
(2) Is signed by the person requesting the cancellation.
B. The effect of recordation of the instrument ceases upon cancellation by the recorder pursuant to the provisions of this Article.

. The filing of the Executory Foreclosure Case interrupted prescription of the Note. La. C.C. art. 3462. (providing that ‘'[prescription is interrupted when the owner commences action against the possessor, or when the obli-gee commences action against the obligor, in a court of competent jurisdiction and venue.”) Thus, the Note has not prescribed.