502 So.2d 609 (1987)
Joseph P. CONSTANCE, Plaintiff-Appellee,
v.
Herbert Thomas SUDWISCHER, Defendant-Appellant.
No. 85-1105.
Court of Appeal of Louisiana, Third Circuit.
February 13, 1987.
Writ Denied April 3, 1987.
*610 Cecil R. Sanner, Lake Charles, for defendant-appellant.
Jones, Jones and Alexander, Glenn Alexander, Cameron, for plaintiff-appellee.
Before FORET, STOKER, DOUCET, LABORDE, and KING, JJ.
KING, Judge.
The sole issue presented by this appeal is whether the trial court was correct in finding that the Sheriff and Ex Officio Tax Collector of Cameron Parish, Louisiana made a reasonable effort to notify a tax debtor of his tax delinquency prior to the sale of the tax debtor's property for unpaid taxes.
Joseph P. Constance (hereinafter sometimes referred to as Constance) filed suit against Herbert Thomas Sudwischer (hereinafter sometimes referred to as Sudwischer) to quiet title to property formerly owned by Sudwischer and conveyed to Constance by tax sale. After a trial on the merits, the trial court rendered judgment in favor of Constance, quieting and confirming the title to the property in favor of Constance and assessing all costs of the *611 proceedings against Sudwischer. From this judgment, Sudwischer devolutively appealed. We reverse.

FACTS
Herbert Thomas Sudwischer acquired full ownership of a certain parcel of beach front property located in Cameron Parish, Louisiana (hereinafter sometimes referred to as Lot 4) by an Act of Partition dated January 18, 1979 between Sudwischer and Clarco Leisure, Inc. (hereinafter sometimes referred to as Clarco). Sudwischer and Clarco previously had acquired a 1/16ths and a 15/16ths interest, respectively, in ownership in indivision of a larger tract of land which included Lot 4.[1] Sudwischer acquired his interest in the original tract of land by inheritance, as evidenced by a Supplemental and Amended Judgment of Possession filed in the records of Cameron Parish, Louisiana on February 13, 1978. Clarco acquired the other heirs' interests in the larger tract of land. Sudwischer and Clarco then subdivided the tract and entered into an Act of Partition.
The effect of the Act of Partition was to convey full ownership of Lot 4 to Sudwischer while conveying full ownership of the remainder of the subdivision to Clarco. The Act of Partition was filed in the conveyance records of Cameron Parish, Louisiana on February 6, 1979.
The Office of the Tax Assessor for Cameron Parish, Louisiana (hereinafter sometimes referred to as the Tax Assessor) examined the conveyance records and discovered the Act of Partition conveying full ownership of Lot 4 to Sudwischer. For the tax year 1980 the ad valorem tax rolls were changed to reflect Sudwischer's ownership, showing his acquisition as resulting from the Act of Partition. The Tax Assessor, in changing the tax roll to reflect the change in ownership, failed to show an address for Sudwischer, although the Act of Partition showed on its face that Sudwischer was a resident of Jefferson Parish, Louisiana. As a result the 1980 tax roll was turned over to the Sheriff and Ex Officio Tax Collector for Cameron Parish, Louisiana (hereinafter sometimes referred to as the Sheriff) for tax collection with Sudwischer listed as the owner of Lot 4, but without an address for mailing to him a notice of taxes due.
In an attempt to notify Sudwischer of his 1980 taxes due, the Sheriff mailed a tax notice to Sudwischer, c/o Clarco, at Clarco's Lake Charles, Louisiana address. At the time the tax notice was sent to Clarco, Clarco no longer owned any interest in Lot 4 as a result of the Act of Partition. The notice was not accepted and returned marked "Return to Writer." On February 8, 1981, a 1980 tax delinquency notice, or "Last Notice," was attempted to be sent by the Sheriff to Sudwischer via certified mail, again c/o Clarco at Clarco's Lake Charles address which was also not accepted and returned marked "Unclaimed." The Sheriff recorded in the mortgage records of Cameron Parish, Louisiana a proces verbal showing Sudwischer as a delinquent tax debtor for 1980 taxes and then twice published a general notice to tax debtors in the Cameron Parish Pilot, the official Cameron Parish newspaper. The proces verbal did not describe how service of notice on Sudwischer was made by the Sheriff, since notice to Sudwischer had been attempted but was unsuccessful.
Subsequently, on April 22, 1981, Constance purchased Lot 4 at a tax sale held *612 by the Cameron Parish Sheriff for 1980 taxes and Constance was issued a tax deed by the Sheriff which was recorded in the Conveyance Records of Cameron Parish, Louisiana on April 23, 1981.
In May, 1984, more than three but less than five years after recordation of the tax deed, Constance filed this suit to quiet title to the property purchased at tax sale.[2] On or about October 23, 1984, Sudwischer filed a separate suit to annul the tax sale of the same property in the suit entitled Herbert Thomas Sudwischer v. Joseph P. Constance, bearing Number 100-9812 on the Docket of the Thirty-eighth Judicial District Court. This suit to quiet title was consolidated for trial with the suit to annul the tax sale. A judgment was rendered in the consolidated cases in favor of Constance, quieting and confirming his title to the property and dismissing the demands of Sudwischer to annul the tax sale. These suits remain consolidated on appeal and, since the law and relevant facts are common to both, our opinion here is equally applicable. However, we render a separate judgment in the consolidated case of Sudwischer v. Constance, 502 So.2d 616 (La. App. 3rd Cir.1987).
During the trial, testimony was introduced to establish the usual practice employed by the Sheriff in attempting to give notice to delinquent tax debtors whose addresses are unknown. Testimony indicated that the Sheriff generally took steps to locate addresses for delinquent taxpayers, including checking the Cameron Parish conveyance records, looking in the Cameron and Lake Charles telephone directories and the Lake Charles City Directory, calling directory assistance and, on occasion, checking the obituary column in the local newspaper. The trial judge concluded that several of these steps were taken by the Sheriff to locate Sudwischer, but to no avail. The trial court therefore concluded that the Sheriff made a reasonable effort to notify Sudwischer of his 1980 delinquent taxes; that the Sheriff's proces verbal, as filed, was sufficient; and that "The publication in the parish newspaper was the proper notification to Mr. Sudwischer since he was a nonresident whose address was unknown." For these reasons the trial court rendered judgment in this suit, which was signed on August 5, 1985, in favor of Constance, quieting his tax title and taxing all costs of this suit against Sudwischer.
Sudwischer devolutively appealed the trial court judgment and contends:
(1) The trial court was in error in finding that Sudwischer was properly notified by the Cameron Parish Sheriff and Tax Collector of his tax 1980 delinquency;
(2) The trial court was in error in finding that the Cameron Parish Sheriff and Tax Collector took additional reasonable steps to notify Sudwischer of his 1980 tax delinquency.
Constance answers this appeal, contending that Sudwischer was properly notified of his 1980 tax delinquency and that the Cameron Parish Sheriff and Tax Collector took additional reasonable steps to notify Sudwischer of his 1980 tax delinquency.

NOTICE OF TAX DELINQUENCY AND TAX SALES
Article 7, § 25 of the Louisiana Constitution of 1974 provides, in pertinent part:
"[a]t the expiration of the year in which the taxes are due, the collector, without suit, and after giving notice to the delinquent in the manner provided by law, shall advertise for sale the property on which the taxes are due." (Emphasis added.)
This article further requires the advertisement to be published in the official journal of the parish or municipality, if such an official journal exists, and provides that a tax deed shall be prima facie evidence of the validity of the tax sale. LSA-1974 Const. Art. 7, § 25(A). Tax sales are presumed valid and the party attacking the *613 validity of a tax sale bears the burden of proving an alleged invalidity. Meares v. Pioneer Production Corp., 382 So.2d 1009, (La.App. 3rd Cir.1980), writ den., 392 So.2d 667 (La.1980).
The statutory procedure to be followed by the tax collector for providing notice of delinquency of taxes due by property taxpayers is set forth in LSA-R.S. 47:2180.[3] This article was amended in 1985 to include the second sentence in Subsection B and a fourth paragraph "D". The additions by amendment resulting from the 1985 Act are therefore not applicable to the present case. Subsection A of this statute, in effect in 1980 and 1981, requires the Sheriff and Tax Collector to notify the record owner of property concerning delinquent taxes by written or printed notice. Subsection B of the article, in pertinent part, provides that written notice of delinquency shall be sent by certified mail, return receipt requested and that after the Sheriff and Tax Collector has completed service of notice, he is to make out a proces verbal stating the names of each delinquent notified, his post office address, a brief description of the property, taxes due thereon and how service of notice was made. This proces verbal is to be signed by the Sheriff and Tax Collector in the presence of two witnesses and filed with the Clerk of Court. Subsection C of the article provides that notice to all unknown property owners and all nonresident owners of such property, whose post office addresses are unknown, shall be published in an official parish newspaper, if available.

REASONABLE STEPS TO NOTIFY TAXPAYER WHOSE ADDRESS IS UNKNOWN
In addition to the mandatory requirement that notice of delinquency be *614 given a taxpayer before his property may be validly sold for nonpayment of taxes, as specifically provided for in LSA-Const. Art. 7 § 25 and LSA-R.S. 47:2180, the jurisprudence requires that where mailing of a tax notice is required, and a mailed notice is returned to the tax collector as undelivered or unclaimed, the tax collector must take additional reasonable steps to notify the tax debtor of a delinquency, and failure of the tax collector to perform this obligation renders a tax sale null and void. Landry v. Beaugh, 452 So.2d 400 (La.App. 3rd Cir. 1984), writ den., 458 So.2d 121 (La.1984); Childress v. Johnson, 387 So.2d 1217 (La. App. 1st Cir.1980), writ den., 393 So.2d 744 (La.1980); Mason v. Nattin, 355 So.2d 44 (La.App. 2nd Cir. 1978); Succession of Windes v. Yerger, 234 So.2d 224 (La.App. 2nd Cir.1970).
The testimony adduced at trial indicates that in 1980 the usual procedures employed by the Sheriff and Tax Collector in Cameron Parish, Louisiana to locate taxpayers whose addresses were unknown included checking the conveyance records, checking telephone directories in Cameron, Louisiana and in Lake Charles, Louisiana, the area of the nearest urban concentration, checking the Lake Charles City Directory, calling directory assistance, and, on occasion, checking the obituary column in the local newspaper. Although the Sheriff and Tax Collector now employs a driver's license check to attempt to locate taxpayers whose addresses are unknown, such procedure was not used to locate delinquent taxpayers for the tax year 1980.
When the tax roll of the Tax Assessor was turned over to the Sheriff and Tax Collector, there was no mailing address shown for Sudwischer, the then owner of Lot 4. The Sheriff and Tax Collector then attempted to send notice to Sudwischer, c/o Clarco, a former owner in indivision. Notice of delinquency to a person designated as owner on the tax rolls is insufficient if the conveyance records show that another person is the owner. Hines v. Dance, 460 So.2d 1152 (La.App. 2nd Cir. 1984). We find that notice of tax delinquency sent in care of a former owner in indivision, when the conveyance records show another person to be the owner, is insufficient to notify the tax debtor. Although there is no absolute requirement that the owner or any other specific person receive actual notice of delinquency, formal statutory requirements must be complied with in a manner sufficient so that the owner can reasonably be expected to receive notice so that he may obviate the tax sale by paying his back taxes. U.S. v. Blair, 331 F.Supp. 1277 (E.D.La.1971). We find the attempted written notices to Sudwischer insufficient to constitute reasonable notice of taxes due, as Clarco's address was not one where Sudwischer could reasonably have been expected to receive notice particularly in view of the fact that the conveyance records showed that Sudwischer was a resident of Jefferson Parish, Louisiana.
Further, the fact that the Sheriff and Tax Collector published notice in the local newspaper does not constitute reasonable notice to a taxpayer where the tax collector makes no further effort to locate the taxpayer. Richards v. Martin, 411 So.2d 1153 (La.App. 1st Cir.1982), writ den., 413 So.2d 507 (La.1982).
The trial court record does not support a finding that the Sheriff made additional reasonable effort to locate Sudwischer, once the notices were returned and marked "Return to Writer" and "Unclaimed", as the evidence shows that the Sheriff did not check the conveyance records, which was a part of his usual procedure for locating taxpayers whose addresses were unknown. Had the Sheriff checked the conveyance records, he would have found the Act of Partition recorded on February 6, 1979, showing Sudwischer as being the owner of Lot 4 and a resident of Jefferson Parish, Louisiana. The evidence shows that Sudwischer was listed in the Greater New Orleans telephone directories for the years 1979-1981. Had the Sheriff's office called directory assistance for the New Orleans area, it could easily have located Sudwischer. Such calls to directory *615 assistance was something that the Sheriff normally did as part of his usual procedure to locate tax debtors. While the Sheriff might have checked the Cameron and Lake Charles telephone directories, there is no evidence in the trial court record to reflect that such effort to locate Sudwischer was in fact made in Jefferson Parish, although this was the Sheriff's usual procedure.
The trial court in its reasons for judgment mentions the fact that Sudwischer was a licensed real estate agent, apparently attempting to impose a standard of constructive notice that his taxes were due. We are not prepared to impose a greater standard of duty on a delinquent taxpayer based on the taxpayer's profession. Informal knowledge that taxes are due does not take the place of legally required notice. Recker v. Dupuy, 161 La. 392, 108 So. 782 (1926). In this instant case, we find that sending notices to Sudwischer in care of a former owner in indivision was not reasonably calculated to give notice as required under LSA-R.S. 47:2180 and LSA-Const. Art. 7 § 25. We do not find, as Constance contends and as the trial court found, that the Sheriff took additional reasonable steps to notify Sudwischer of his 1980 tax delinquency, particularly where the usual investigation of the Sheriff involved checking the conveyance records and calling telephone directory assistance, and where the Sheriff, had he followed his usual procedure, could have found that Sudwischer was a resident of Jefferson Parish, Louisiana and could have obtained his mailing address. Under these circumstances, we find that the Sheriff did not take reasonable steps, by utilizing his usual procedure to determine the mailing address of the delinquent tax debtor, before exposing the tax debtor's property for sale, and for this reason the tax sale is null and void. Cf. Salsman v. Bloom, 172 La. 238, 133 So. 760 (1931), citing In re La Salle Realty Co., 171 La. 965, 132 So. 516 (1931); Recker v. Dupuy, supra; Jones v. Curran, 156 La. 1055, 101 So. 415 (1924). Had the Sheriff mailed notice to Sudwischer at his Jefferson Parish, Louisiana, address, such would have been sufficient notice and Sudwischer would have been in a position to prevent the sale of his property by paying his 1980 delinquent taxes.
Sudwischer also raises issue as to the sufficiency of the proces verbal as meeting the requirements of LSA-R.S. 47:2180. Since, we reverse the trial court judge's finding that Sudwischer was given notice of his 1980 taxes due and notice of delinquency, as required by LSA-R.S. 47:2180 and LSA-Const. Art. 7 § 25, we do not reach the issue of whether or not the Sheriff's proces verbal complied with the requirements of R.S. 47:2180.
For the foregoing reasons, the judgment rendered in this suit confirming and quieting tax title in favor of Joseph P. Constance and against Herbert Thomas Sudwischer is reversed and set aside.
All costs of these proceedings are taxed to plaintiff-appellee.
REVERSED AND RENDERED.
FORET, J., dissents for written reasons assigned.
LABORDE, J., dissents for the reasons assigned by Judge FORET.
FORET, Judge, dissenting.
I feel obliged to dissent from the majority's reversal of the trial court judgment.
At the time of the tax sale herein involved, by jurisprudential rule, where the mailing of a tax notice was required and the notice was returned to the tax collector undelivered or unclaimed, the tax collector was required to take additional reasonable steps to notify the tax debtor. The magic word then is what steps will be considered to be "reasonable."
In this case, it seemed to the trial court and to me that the tax collector had made reasonable efforts to notify Sudwischer of taxes owed on the said property. The testimony of four employees of the Cameron Parish Tax Collector's office indicates that they do make an effort to locate addresses for delinquent taxpayers. They testified that they check the conveyance records; *616 they look in the telephone directories; they call directory assistance; and they even go so far as to check the obituaries in the local newspapers to determine heirs of delinquent taxpayers and to notify them of taxes being due. One of the employees, Mrs. Ratcliff, who had been in charge of the tax collector's office for approximately twenty years, testified that by using all of the available resources which they had in the past, they are usually quite successful in locating delinquent taxpayers, and that they have generally found approximately 75 to 85% of them after using these methods.
Having mentioned above some of the efforts made by the tax collector's office to find delinquent taxpayers and notify them of the impending tax sale, we should look to the efforts made by the present delinquent taxpayer to pay the taxes which he owes. Not only did Sudwischer not see to it that his mailing address was placed in the deed by which he acquired the property, he never did, in a five or six-year period, contact the tax collector's office although this was the only parcel of property which he owned in Cameron Parish. The record shows that Sudwischer, a licensed real estate broker in Louisiana, had passed through Cameron Parish six to eight times during the five or six-year period, and had even stopped by to see the property but had never, during all that time, come by the tax assessor's office or the tax collector's office to see about the property taxes. He testified that he was quite familiar with the payment of taxes and that he had paid property taxes many times; and he positively testified that he knew taxes were due on his property in Cameron Parish.
The majority opinion makes much of the fact that the Cameron Parish Tax Collector had reason to believe that Sudwischer was in Jefferson Parish because the acquisition deed stated that he was a resident of Jefferson Parish. Countering the majority's basis for reversing the trial court, I would like to point out that Jefferson Parish is a sprawling parish of 500,000 population and is one of the largest parishes, in land area, of this State. In Jefferson Parish are located the communities of Grand Isle, Gretna, Harahan, Harvey, Jefferson, Kenner, Marerro, Metairie, River Ridge, Waggaman, and Westwego. It seems to me that to impose the burden upon the tax collector to track down the taxpayer by telephone, or otherwise, in these circumstances would be going beyond what is reasonably expected of him. If anybody was unreasonable in this situation, it was the delinquent taxpayer, Sudwischer, and I believe that our learned brother in the trial court properly determined what was reasonable and what was not.
Accordingly, I respectfully dissent.
NOTES
[1] The tract of land inherited by Sudwischer and previously owned in indivision with Clarco was described as:

"Commencing at a point 834.8 feet South 85 degrees West and 60 feet North of the Southeast corner of Section 36, Township 15 South, Range 13 West: thence North 626 feet; thence South 85 degrees West 347.8 feet; thence South 626 feet; thence North 85 degrees East 347.8 feet to point of commencement, containing 5 acres."
The property was subdivided and a plat was filed bearing File No. 156570 in the records of Cameron Parish, Louisiana. Lot 4 of the subdivision, known as Little Florida subdivision, is described as follows:
"Lot 4 of Little Florida, a subdivision in Irregular Sections 35 and 36, Township 15 South, Range 13 West, as per plat bearing File No. 156570, records of Cameron Parish, Louisiana."
[2] LSA-Const. Art. 7, § 25 establishes a three year redemption period for property sold at a tax sale. Section 25(C) of the Article provides for annulment of a tax sale within five years of date of recordation of a tax deed, if no service of notice of the tax sale is given.
[3] LSA-R.S. 47:2180, as amended, reads, in pertinent part, as follows:

"A. On the second day of January each year, or as soon thereafter as possible, the tax collector shall address to each taxpayer who has not paid all the taxes, which have been assessed to him on immovable property, or to the record owner of the property for which the taxes are delinquent, or to the actual owner in the event the record owner is deceased, written or printed notice in the manner provided for herein that his taxes on immovable property must be paid within twenty days after the service or mailing of the notice, or that the property will be sold according to law.
B. The tax collector shall send to each taxpayer by certified mail, with return receipt requested, the notice prescribed herein, provided that in cities containing a population of over fifty thousand persons, the tax collector may either send this notice by certified mail or may make personal or domiciliary service on the taxpayer. [In the event the certified notice is returned as being undeliverable by the post office, the tax collector may comply with Article 7 Section 25 of the Constitution of Louisiana and the provisions of this Section by advertising the tax debtor's property in the advertising required for unknown owners in Subsection C of this Section.] After the tax collector shall have completed the service by the notices herein required, either by mail or by personal or domiciliary service, he shall make out a proces verbal stating therein the names of delinquents so notified, their post office addresses, a brief description of the property, the amount of taxes due and how the service of notice was made. Such proces verbal shall be signed officially by him in the presence of two witnesses and filed, in the parishes other than the parish of Orleans, in the office of the clerk of court for recording and preservation. In the parish of Orleans, such proces verbal shall be filed in the office of the state tax collector for the city of New Orleans and preserved for record. This proces verbal shall be received by the courts as evidence. The tax collector shall be entitled to collect actual mailing costs of each certified, with return receipt, notice, and mileage shall be charged for service of this notice. A like charge will be made if the property is adjudicated to the state or any subdivision thereof.
C. The tax collector shall publish one general notice substantially in the form set forth herein, addressed to all unknown owners of assessed immovable property situated in his parish, and to nonresident owners of such property whose post office address is unknown, in which he shall describe the property as described in the tax roll. Such notice shall be published once a week for two weeks in a newspaper published in his parish, or if there be none published in the parish, then such notice shall be given in the manner provided by law for judicial sales. He shall pay for the publication, and shall be entitled to collect as costs therefor the pro rata share of the publication costs from each unknown owner or from the property assessed to him. The collector shall certify on his tax rolls that he has published the notices, and the certificate on either roll shall make full proof thereof until disproved in a judicial proceeding." (Brackets denote sentence added by Acts 1985, No. 636, § 1.)