729 So.2d 760 (1999)
Wayne C. GIORDANO
v.
Elaine Maud Gilderdale, wife of/and Douglas Gordon MacDONALD and Virginia Lee Whitten, wife of/and Andrew Fergus MacDonald.
No. 98-CA-2035.
Court of Appeal of Louisiana, Fourth Circuit.
March 10, 1999.
Thomas G. Donelon, Metairie, LA, Attorney for Plaintiff/Appellant.
W. Eric Lundin, III, Jerry J. Lobrano, Belle Chasse, LA, Attorneys for Defendant/Appellee.
Court composed of Judge MOON LANDRIEU, Judge PATRICIA RIVET MURRAY, Judge Pro Tempore JAMES A. GRAY, II.
JAMES A. GRAY, II, Judge Pro Tern.
The defendants appeal the trial court's judgment confirming the sale of their property for nonpayment of taxes. We reverse.

PROCEDURAL HISTORY
On June 5, 1993, property located at 106 Jerry Street in Belle Chasse, Louisiana was sold at a tax sale by the Plaquemines Parish Sheriff for nonpayment of 1992 taxes. The defendants, Andrew MacDonald, his wife Virginia Lee Whitten MacDonald, his father *761 Douglas MacDonald, and his father's wife Elaine Maud Gilderdale MacDonald, were the record owners of the property at the time of the sale. Plaintiff Wayne Giordano was the successful bidder on the property.
On December 23, 1996, after the three-year preemptive period, Giordano filed a petition to quiet and confirm tax title. He alleged in the petition that the defendants [hereinafter "the MacDonalds"] were absentees, and the court appointed a curator to represent them. Through the efforts of the curator, the MacDonalds were located. They retained counsel, who filed on their behalf an answer and reconventional demand seeking to have the tax sale annulled on grounds of improper notice.
The matter was tried on December 10, 1997. On March 25, 1998, the district court rendered judgment confirming plaintiffs title. From this judgment, the MacDonalds have appealed.

FACTS
Douglas MacDonald first came into possession of the property at 106 Jerry Street in 1955 by means of a lease-purchase agreement. As contemplated by that agreement, ownership of the property was transferred to Douglas MacDonald and his son Andrew by act of sale dated September 20, 1984 for a stated price of $11,000.00. At trial, Andrew MacDonald testified that his father and mother lived at 106 Jerry Street from 1955 until his mother died in 1976, and that his father continued to reside there until May of 1988, when he could no longer care for himself due to Altzheimer's disease. He then moved in with Andrew and his wife Virginia, who live in Metairie. Three months later, in July of 1988, Douglas MacDonald died.
Andrew MacDonald testified that when his father moved in with him in May 1988, he submitted a change of address form to the post office in Belle Chasse, and he began receiving his father's mail at his address in Metairie. He also testified that on July 21, 1988, he sent a letter to the Sheriff of Plaquemines Parish informing him of Douglas MacDonald's death and requesting that any parish tax bills or other official correspondence concerning 106 Jerry Street henceforth be sent to Andrew's address at 3020 North Labarre Road in Metairie. Andrew's wife Virginia corroborated this testimony. Plaintiffs counsel objected to the letter, because it was generated from a computer hard drive. The trial judge took the matter under advisement, after assuring defendants' counsel that if he decided the letter was inadmissible, he would allow it to be proffered. However, there is no further mention of the letter in the transcript, and the letter is not in the record, as a proffer or otherwise.
Andrew MacDonald testified that the only communication he ever received from Plaquemines Parish regarding the property was a 1991 property tax bill, addressed to 106 Jerry Street, which he received approximately two months late. Although he did not recall exactly how he got the bill, Andrew remembered clearly that he was upset because it was late. He testified that he paid the 1991 property taxes with a personal check dated April 14, 1992. He also stated he enclosed a note with the check informing the Sheriff that the payment was late because the address on the bill was incorrect, and again giving his address in Metairie as the correct address. The cancelled check, which has the MacDonalds' Metairie address printed on it, was introduced into evidence. Andrew testified that he never received any other property tax bills, either for 1988, 1989, 1990, or any year subsequent to 1991. He said his father had never mentioned paying taxes on the property, and Andrew had recently learned from going through his father's records that his father had a homestead exemption on the property.
Andrew stated that since his father's death, he had periodically rented out the Jerry Street residence, and there had been tenants there off and on. Besides Jerry Street, Andrew said he and his wife do not own any other property except their own residence, and his mortgage company pays the property taxes on that.
Finally, Andrew testified that he has a Louisiana driver's license, that he has been listed in the telephone book at his current Metairie address since 1980, and that he has had an answering machine for that whole *762 time. His wife Virginia corroborated this information.
Monica Nicosia, a senior supervisor in tax collection for the Plaquemines Parish Sheriff, testified that 106 Jerry Street was the address listed for the MacDonalds on the tax assessment rolls. She stated that a delinquent tax notice for the year 1992 was sent to that address and was returned with the notation "Forwarding order expired." The property was then advertised once in the Plaquemines Gazette in a column headed "Unknown Owners." It was again advertised in the Gazette, which is the official journal of Plaquemines Parish, three more times before the tax sale occurred, when it was sold to Wayne Giordano for taxes, costs and fees amounting to $475.93.
According to Ms. Nicosia, if a change of address notice had come in for the property, the new address would have been put into the Sheriff's office computer and then sent to the assessor's office so it could be changed there; if the assessor's office had received such a notice, it would likewise have been sent to the Sheriff's office.
When questioned, Ms. Nicosia stated that it was office policy to check the telephone book (for "whatever area that address is in or the New Orleans area") and to call property owners before their property was sold at a tax sale. She said the Sheriff's office personnel also generally check with the post office to see if the forwarding order was on file. Ms. Nicosia did not remember having personally done any of these things in the instant case, but she said everyone in the office participates in these activities prior to a tax sale. She testified it was not office procedure to check with the driver's license bureau or to physically send someone to the property.
Plaintiff Wayne Giordano testified that after purchasing the property, he recorded the deed on June 25, 1993. He stated that he received and paid the property tax bills for 1993, 1994, 1995 and 1996. Upon filing suit to confirm his title, he had the court appoint a curator to represent the absent property owners. He also paid the curator's costs of $884.82. When questioned, he stated that he had attended the tax sale not to purchase this specific piece of property, but to bid on whatever was going up for sale.

REASONABLENESS OF NOTICE
Appellants seek to have the tax sale annulled on grounds of inadequate notice. Therefore, the sole issue on appeal is whether the trial judge committed manifest error in determining that the actions taken by the Plaquemines Parish Sheriff's office in the instant case constituted reasonable notice to the MacDonalds.
As this court has held, a tax sale is presumed valid, and the party attacking the sale bears the burden of proving its invalidity. Giordano v. Riverbend Rentals Co., 95-2264 (La.App. 4 Cir. 5/8/96), 674 So.2d 444, 446, writ denied, 96-1389 (La.10/4/96), 679 So.2d 1382. Specifically, the party attacking the sale must show by a preponderance of the evidence that the steps taken to notify the tax debtor were unreasonable. DeSalvo v. Roussel, 629 So.2d 1366, 1368 (La.App. 4th Cir.1993), writ denied, 94-0156 (La.4/22/94), 637 So.2d 155.
Under both federal and state constitutional mandates, notice to a property owner of the potential loss of his property is a matter of due process. Mennonite Board of Missions v. Adams, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983). The Louisiana Constitution provides in Article 7, Section 25(A)[emphasis added]:
...[A]t the expiration of the year in which the taxes are due, the collector, without suit, and after giving notice to the delinquent in the manner provided by law, shall advertise for sale the property on which the taxes are due.
The statute describing the manner of notice is La. R.S. 47:2180, which provides, in pertinent part:
A. On the second day of January of each year, or as soon thereafter as possible, the tax collector shall address to each taxpayer who has not paid all the taxes, which have been assessed to him on immovable property... written or printed notice in the manner provided for herein that his taxes on immovable property must be paid within twenty days after the service or mailing *763 of the notice, or that the property will be sold according to law.[1]
B. The tax collector shall send to each taxpayer by certified mail, with return receipt requested, the notice prescribed herein.... In the event the certified notice is returned as being undeliverable by the post office, the tax collector may comply with Article 7 section 25 of the Constitution of Louisiana and the provisions of this Section by advertising the tax debtor's property in the advertising required for unknown owners in Subsection C of this Section....
Subsection C of the statute states that the tax collector shall place the required notice "once a week for two weeks in a newspaper published in his parish."
In the instant case, the notice was sent by certified mail to 106 Jerry Street, the address of the property, which was also the address listed in the Plaquemines Parish records for the MacDonalds. The notice was returned to the Sheriff's office with the notation "Forwarding address expired." The property was then advertised three times in the Plaquemines Gazette before the sale took place.
The appellee, Giordano, argues that these actions were sufficient to provide notice under La. R.S. 47:2180(B). This statute was amended in 1985 to add the second sentence of R.S. 47:2180(B), which specifically provides that if the certified notice is returned undeliverable by the post office, the tax collector may comply with the provisions of both the statute and the Louisiana Constitution by advertising the debtor's property in a parish newspaper at least once a week for two weeks. Prior to this amendment, the jurisprudence required that where a mailed notice had been returned undeliverable, the tax collector must take "additional reasonable steps" to notify the tax debtor of the delinquency, and the failure to take such steps would render the tax sale null and void. Constance v. Sudwischer, 502 So.2d 609 (La. App. 3d Cir.1987), writ denied, 503 So.2d 1019 (La.1987).
In support of his argument, appellee cites two recent cases. In Koeppen v. Raz, 29,880 (La.App. 2 Cir. 10/29/97), 702 So.2d 337, decided under the amended version of the statute, the delinquent notice was sent by certified mail and was returned as undeliverable with the notation "no mail receptacle." The tax collector then advertised the property. The Second Circuit upheld the tax sale, reasoning that the amended version of R.S. 47:2180 spells out what additional steps must be taken by the tax collector when the certified notice has been returned undeliverable, and the statute expressly cites publication as being reasonable notice in that instance.
Appellee also relies on DeSalvo v. Roussel, supra, decided under the pre-1985 version of R.S. 47:2180, in which the tax sale notice was sent by certified mail to the taxpayers' address on the city tax rolls, and the return receipt was executed by the taxpayers' thirteen-year-old son. This court affirmed the validity of the tax sale, even though the notice was never received by either taxpayer, and one of the two (formerly married) taxpayers no longer lived at that address. In upholding the sale, we concluded: "Overall, the Desalvos have not shown that the notice was sent to the wrong address nor that the steps taken to notify them of the tax sale were unreasonable." Id. at 1369.
Appellants argue that these cases are distinguishable from the instant case because in each of them, as in all the cases relied upon by appellee, the delinquent notice was sent to the correct address. They contend that in the instant case, the tax sale should be voided because the Plaquemines Parish Sheriff sent the notice to an incorrect address even though they had notified the Sheriff of the correct address, and their correct address was easily ascertainable by following established office routine. Essentially, appellants contend that the notice was unreasonable because the Sheriff should have known their correct address.
Appellants rely on Constance v. Sudwischer, supra, decided under the pre-1985 law, in *764 which the court held that where mailed notices were returned "Unclaimed," the Sheriff of Cameron Parish was required to take additional steps to locate the taxpayer, such as checking the conveyance records, checking the Greater New Orleans telephone directory, or calling directory assistance. Although the Sheriff usually checked with directory assistance, he could not prove he had done so in this particular case. Because the tax debtor lived in Jefferson Parish and was listed in the telephone directory, the court reasoned that such steps would have located him. The court invalidated the tax sale, concluding: "Under these circumstances, we find that the Sheriff did not take reasonable steps, by utilizing his usual procedure to determine the mailing address of the delinquent tax debtor, before exposing the tax debtor's property for sale, and for this reason the sale is null and void." Id. at 615.
It is clear that under the pre-1985 law, when a notice of delinquency was returned undeliverable and the only other action taken by the tax collector was to advertise in the local newspaper, the courts invalidated the tax sale for lack of proper notice. See, e.g., Constance v. Sudwischer, supra; Richards v. Martin, 411 So.2d 1153 (La.App. 1st Cir.), writ denied, 413 So.2d 507 (La.1982). However, the 1985 amendment states specifically that where a notice sent by certified mail is returned undeliverable, publication is sufficient. Therefore, the initial issue in this case is whether the prerequisite that the notice must be sent to the tax debtor's correct address survives under the amended version of the statute.
We believe that it does survive, because the amendment makes sense only if it is assumed that the tax notice is sent to the right address. Hypothetically, if the tax collector had inadvertently sent the notice to an address other than the one listed for that taxpayer on the tax rolls, no court would conclude that the taxpayer had received adequate notice. Therefore, the next question is, under the particular circumstances of this case, was the notice sent to the "correct" address?
There is no dispute that the address, to which the notice was sent, 106 Jerry Street, was the address listed on the Plaquemines Parish tax rolls for the MacDonalds. However, it was not the MacDonalds' actual address. Appellants contend that they notified the Sheriff in writing on two separate occasions, once in a letter and again in a note accompanying their 1991 tax payment, of the change in their address. This contention is supported by the uncontroverted testimony of Andrew MacDonald and his wife. In addition, there is uncontroverted evidence that the MacDonalds were listed in the telephone directory at their current address. According to the testimony of Monica Nicosia, the employees in the Plaquemines Parish Sheriff's office "always" checked with the post office and checked the New Orleans telephone directory in an attempt to locate property owners whose delinquent notices had been returned with no forwarding address. Nevertheless, Ms. Nicosia could not say positively that this was done in the case of the MacDonalds.
We decline to hold that the usual procedures employed by the Plaquemines Parish Sheriff's office to locate property owners are unreasonable. However, in the instant case, in view of uncontroverted evidence that the MacDonalds notified the Sheriff of the change in their address and further, that had the usual procedures been followed, the Sheriff would have easily located them, we find that they were deprived of their property without proper notice.
We therefore find that the trial judge's decision to confirm the tax sale was manifestly erroneous. In so holding, we note that the trial judge's decision, as ascertained from his written reasons for judgment, was apparently not based on any lack of credibility on the part of the MacDonalds. Rather, he indicated that having received and paid tax bills for the property in the years 1988 to 1991, the MacDonalds should have realized that they did not receive a tax bill in 1992. This reasoning is based upon a faulty assumption of fact. The evidence clearly showed that the MacDonalds neither received nor paid a tax bill in the years 1988, 1989, or 1990; they paid only the 1991 bill, which they received late. The trial judge also seemed persuaded by the fact that, as he *765 put it, the MacDonalds were involved in renting the residence to a "series" of tenants. However, the evidence established only that there were sometimes tenants living on the property, not that it was continuously occupied. There was never any showing that tenants were living there during the time the 1992 delinquent tax notice was sent to the residence. In any case, we decline to place a burden on the property owner to notice that he has not received a tax bill for a particular year or to inquire into its absence, because the law does not support such a burden.
Accordingly, under the facts of this case, we hold that the tax collector failed to provide the MacDonalds with reasonable notice that their property would be sold for delinquent taxes owed. Therefore, we reverse the judgment of the trial court and declare the sale of the property to appellee Giordano to be null and void.
REVERSED.
NOTES
[1] Section A was again amended by Acts 1997, No. 984. It now requires the tax collector to send an additional notice of delinquency each year after the sending of the original notice, until the property is no longer redeemable.