J^SHORTESS, J.
In 1980 James F. Harrison (plaintiff) and his wife[1] bought a vacant lot[2] located at 16314 Strain Road in Baton Rouge. Plaintiff built a building on the lot, where he operated a business selling and servicing automotive equipment. He continually operated his business there through the date of trial, making necessary repairs to the building and paying the mortgage, utilities, and insurance. In 1997 he decided to “semi-retire” and listed the property for sale with a realtor. The realtor advised him, however, that the property had been sold at a tax sale. He then went to the East Baton Rouge Parish Tax Assessor’s office and discovered that Jerome Lenoir (defendant) had purchased the property at a 1988 tax sale. Plaintiff sued defendant and the Sheriff of East Baton Rouge Parish (sheriff) to annul the tax sale and for damages. The trial court annulled the sale but awarded no damages to plaintiff.[3] Defendant appeals.[4]
From 1981 through 1985 the sheriff sent tax notices to plaintiff addressed to 14701 Avalon Avenue in Baton Rouge. In 1986 the tax notice was mailed to 18733 West Piney Point Avenue in Baton Rouge. In November 1987 the tax notice was sent by regular mail to the West Piney Point address. Plaintiff and his wife had separated by that time, however, and he was temporarily living in Florida. The sheriff sent a tax-delinquency notice by certified mail addressed to plaintiff and his wife at the West Piney Point address in April 1988. That notice was returned to the sheriff stamped “FORWARDING ORDER EXPIRED.”
W. Steve Blount, the sheriffs tax director, testified that when a tax-delinquency notice is returned, sheriffs deputies and temporary employees check the telephone book and the city directory, as well as the assessor’s records, to look for a new address. If none is found, the property is advertised twice in the local newspaper “under the public notice in little small print,” and then the property is sold at the annual tax sale.
lain Mennonite Board of Missions v. Adams,[5] the United States Supreme Court recognized that the sale of one’s property for nonpayment of taxes is an action that affects a property right protected by the Due Process Clause of the Fourteenth Amendment. Before such an action can be taken, a state must provide “notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.”-[6] The Mennonite court found that if an interested party’s whereabouts are ascertainable using “reasonably diligent efforts,” [7] the seizing party must provide notice by “mail or other means as certain to ensure actual notice.”[8]
Long before the Supreme Court’s pronouncement in Mennonite, it was the law of this state that when a notice of tax delinquency is sent to a taxpayer’s address of record, and that address is incorrect, it *1193 is the tax collector’s duty to use reasonably diligent efforts to ascertain the taxpayer’s proper address and give the required notice.[9] In Messina v. Owens,[10] the tax debtor owned property at 914 Pine Street in Monroe and had resided there for twenty-three years. The tax notice was sent to the address on the tax rolls, West Monroe, Route 1, and was returned. The tax collector advertised the property in the newspaper and then sold it at tax sale. The Louisiana Supreme Court annulled the sale, stating that when the notice was returned, “it then became the duty of the tax collector to make inquiry as to the residence of the plaintiff.”[11]
Although Blount testified about the procedure generally used by the sheriff when a mailed notice of delinquency is returned, no one testified as to what was done in this particular case. Plaintiff testified that in 1987 and 1988, the business he operated on this property was called the Jim Harrison Company, and the business had a telephone. Reasonably diligent efforts by the sheriff to inquire as to the plaintiffs correct address might have included checking the business listings in the telephone directory, checking the mortgage records for the name of the mortgagee, if any, contacting the utility | companies for service at the property address, mailing a notice to the actual address of the property, or sending a deputy to the property.
Defendant argues that plaintiff should be held accountable for failing to notify the tax collector that he had moved and for failing to realize he had not paid taxes after 1986. Plaintiff originally stated in his petition that he had never received a tax notice on the property and that he believed the property was subject to homestead exemption.[12] At trial, however, he stated he had received tax notices before 1987 and either he or his wife paid the taxes. During the time period when the taxes were not paid, he had two heart attacks, two coronary artery bypass surgeries, and heart-transplant surgery, and got divorced. He testified the property taxes “just kind of slipped [his] mind” in light of everything else going on in his life.
In Mennonite, the Supreme Court held that a party’s ability to take steps to safeguard his interests does not relieve the state of its constitutional obligation to give notice. And in the recent case of Giordano v. MacDonald,[13] the fourth circuit stated the law does not support placing a burden on a property owner to realize he has not received a tax bill for a particular year or to inquire into its absence.
We decline to hold that the usual procedures used by the sheriff to locate property owners are unreasonable in all cases. Under the particular facts of this case, however, we find no manifest error in the trial court’s finding that the sheriffs efforts to locate the property owner herein were insufficient. We thus affirm the judgment of the trial court at defendant’s costs.
AFFIRMED.

. His wife transferred her interest in the property to plaintiff as part of their community-property settlement.

. The deed recited that the property "will constitute the family home of the purchasers.” Plaintiff testified he and his wife had intended to build a house on the property, but the lot was vacant when purchased.

. The court also ordered plaintiff to pay defendant the costs and taxes he had paid in connection with the property.

. We note defendant filed an exception of prescription in the trial court, which was referred to the merits. The trial court did not expressly rule on the exception, but in light of the judgment in plaintiff's favor, we infer the exception was overruled. Defendant has not assigned any error relating to the exception of prescription.

. 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983).

. Id. at 795, 103 S.Ct. 2706, quoting Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

. Id. at 798 n. 4, 103 S.Ct. 2706.

. Id. at 800.

. See Sheridan v. Commercial Guaranty & Brokerage Corp., 292 So.2d 317 (La.App. 1st Cir. 1974), and cases cited therein.

. 207 La. 967, 22 So.2d 286 (1945).

. 207 La. at 980, 22 So.2d at 290.

. He stated in a “verifying affidavit” that neither he nor his wife, whom he divorced prior to the tax sale, had ever paid taxes on the property or received a tax notice.

. 98-2035, p. 11 (La.App. 4th Cir.3/10/99), 729 So.2d 760, 765, writ denied, 99-0986 (La.6/18/99), 745 So.2d 22.