OPINION OF THE COURT
Kenneth L. Gartner, J.
The plaintiff in this small claims action is a retired Nassau County police detective who asserts that he has been overbilled by the defendant Massapequa Water District for the six years since he purchased his current home.
The plaintiff received a bill for year ending October 30, 2001 indicating that he had been for the entire year utilizing water at the rate of more than 1,350 gallons per day, or over 56 gallons an hour, 24 hours a day and seven days a week, amounting for the year to just under 500,000 gallons — a more than threefold increase over any prior year. The Water District was contacted, and did a check of the plaintiff’s property. The Water District found no leaks which could explain the sudden increase. When plaintiff’s water meter was removed for testing, and a new water meter installed, the plaintiff’s metered water usage drastically dropped over a six-month period.
The plaintiff’s metered water usage had previously shown a steady and continuous increase year by year, even prior to the sudden increase in 2001. The plaintiff had not been aware of any problem because of his unfamiliarity with what are usual and customary levels of water usage for someone in his circumstance. The plaintiff testified credibly that he lives alone, and is in fact often absent during business travel outside the country. He does not have any unusual water usage. He has not changed his lifestyle over the six-year period. This year, when the plaintiff had a crew in to perform an annual power wash of his decks and other property, he monitored their water usage and determined that a full day of this unusually water-consumptive activity had utilized 800 gallons. The plaintiff’s conclusion is that his old water meter had a defect, which was growing ever more severe through continuous deterioration, and that the measurements from the new meter accurately reflect what his true water usage was for the entire six-year period.
The Water District refused to discuss any adjustment with the plaintiff, and indeed refused to mediate the matter in this court. The plaintiff now seeks reimbursement for the difference between what he was billed and paid for the six-year period, *740 and what his true level of consumption, extrapolating from the usage reflected by the new meter, actually was.
The Water District was represented by counsel and its superintendent. The superintendent asserted, under questioning by counsel, that the plaintiffs old meter had been removed and tested and found to be not only accurate, but a bit “off’ in the plaintiffs favor. The superintendent did not dispute that despite the fact that the Water District had the results of its test of the meter, and that the results had been requested repeatedly by the plaintiff, the plaintiff had never been provided with the results prior to trial. The superintendent could not state whether any of the 14,000 other residential homes within the Water District had the same or greater usage as that of the plaintiffs metered 500,000 gallons, or what an average dwelling in similar circumstances would utilize. The superintendent stated that in the current extraordinarily dry summer, there are some homes utilizing 3,000 gallons a day due to lawn watering. While this would amount to a usage of 270,000 gallons during the summer season, the superintendent did not address whether those homes customarily in the remaining nine months of the year utilize the 230,000 gallons of water (which would exceed by more than 60,000 gallons the plaintiffs pre-2001 “high water mark” for water usage for an entire year) necessary to bring their annual consumption to the plaintiffs metered 500,000 gallons for 2001. The superintendent surmised that, assuming the plaintiffs testimony to be true, there might be an undiscovered leak. Alternatively, the superintendent stated that the usage might have been the result of a “drip” in a toilet in the plaintiffs home, which the plaintiff candidly reported that he had noticed upon his return home following a four-day trip abroad, and promptly repaired.
The plaintiff responded that the Water District had itself checked for leaks and found none, and that the drip not only existed for too short a duration to have had an appreciable impact on his annual consumption, but was not the sort of leak from a source under 60 psi of pressure which the Water District utilizes as its benchmark for estimating water loss from leaks.
The Water District initially argued that this court did not properly exercise jurisdiction over the Water District because the Water District was not served in the manner provided in CPLR 311 (a) (8). However, service was made under section 1803 of the Uniform District Court Act.
The Legislature is permitted to specify any manner of service, so long as it complies with the constitutional dictates of *741 due process. (See, e.g., Mathews v Seeburger, 805 SW2d 731 [Mo Ct App 1991] [finding that small claims mail service statutes such as UDCA 1803 meet due process standards articulated in, e.g., Mullane v Central Hanover Bank & Trust Co., 339 US 306 (1950), and Mennonite Bd. of Missions v Adams, 462 US 791, 800 (1983)].)
In the instant case, the Legislature has specifically provided in UDCA 1804 that “[t]he provisions of this act and the rules of this court, together with the statutes and rules governing supreme court practice [such as the CPLR], shall apply to claims brought under this article so far as the same can be made applicable and are not in conflict with the provisions of this article; in case of conflict, the provisions of this article shall control.” Thus, it is UDCA 1803, not CPLR 311 (a) (8), which controls.
The most which can be said is that the UDCA 1803 service by mail was required to be made to one of the categories of individuals specified in CPLR 311 (a) (8). (Hampton v Annal Mgt. Co., 164 Misc 2d 287, 291 [Civ Ct, Bronx County 1994, Suarez, J. (now P.J., App Term, 1st Dept)], revd on other grounds 168 Misc 2d 138 [App Term, 1st Dept 1996].) In the instant case, while the mailing may not have specifically been addressed to one of the categorized classes of individuals, the fact that the Water District in fact actually received the notice and appeared with witnesses and counsel to defend on the merits is sufficient to sustain jurisdiction. (Id.; Cohen v Banks, 160 Misc 2d 159, 165 [Just Ct, Rockland County 1994].)
As no New York case has been found which specifically delineates the type of analysis to be utilized in determining the merits of a case such as this, this court adopts the reasoning of the court in Milkie v Pennsylvania Pub. Util. Commn. (768 A2d 1217, 1220 [Pa Commw Ct 2001] [emphasis in original]). The court there held:
“[T]he controlling principle is that even where tile utility can present evidence that it has tested the customer’s meter and found it to be accurate, the customer may, nonetheless, prove his case by circumstantial evidence which would support a finding that the metered usage exceeded the actual usage * * * [T]he rule operates as a device by which the complainant is protected from dismissal because of his inability to marshal direct proof that his meter had malfunctioned. Any circumstantial evidence which meets this standard will establish a *742 prima facie case.
“Once it is determined that the complainant has made out his prima facie case, the burden of going forward shifts to the utility, but the ultimate burden of persuasion remains with the complainant * * * If the utility presents evidence found to be of co-equal (or greater) weight with that of the complainant, the complainant will not have met his burden of proof. At this stage, the Waldron doctrine provides ‘that the mere proof by the utility that its power measuring devices were accurate is no longer the sole determinant as to whether there is a basis to a complaint of overbilling’.” (Citation omitted.)
The determination, the court held, is one of fact. (Id.; accord, Biga v UGI Utils., 2001 WL 1846825 [Pa Pub Util Commn] [“(W)e have held that evidence that the number of occupants in a household did not change, that there was a low potential for energy use, and that the complainant’s billing history contained no prior abnormalities was sufficient to establish that an overcharge occurred”]; see also, e.g., 53A NY Jur 2d, Energy § 306 [2002 rev] [meter not conclusive as against either utility or customer as to the amount of the product furnished; accuracy of reading must be proven]; Matter of Curtis v Public Serv. Commn., 144 AD2d 768, 768-769 [3d Dept 1988] [amount actually due for metered utility usage is a question of fact for the trier of fact, and a comparison of old and new meter readings following a replacement of the complained of meter is a sufficient basis to sustain such a factual determination].)
Utilizing this standard, following a review of the credible testimony and other evidence, and in the interests of substantial justice, judgment is awarded to the plaintiff in the amount sought.